[No. B018907. Second Dist., Div. One. Sept. 8, 1986.]

YAMAHA MOTOR CORPORATION, U.S.A., Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
VAN NUYS CYCLE, INC., Real Party in Interest.

**COUNSEL**

Kelley, Drye & Warren and Bruce L. Ishimatsu for Petitioner.

Sam W. Jennings and Michael M. Sieving as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

Sweeney & Pafundi and John E. Sweeney for Real Party in Interest.

**OPINION**

**LUCAS, J.**—Petitioner Yamaha Motor Corporation seeks a writ of mandate to compel the superior court to vacate its order overruling Yamaha's demurrer to the first amended complaint of real party in interest Van Nuys Cycle, Inc. and to enter an order sustaining the demurrer without leave to amend.

I

FACTS

Van Nuys Cycle is a motorcycle dealership franchised by Yamaha since 1966 to sell and service Yamaha motorcycles. In September 1982, Yamaha began distribution and sales of a new product which they designated as the RIVA motorscooter. Van Nuys attempted to order the RIVA products pursuant to its dealer agreement, but Yamaha refused to sell the RIVA to them or to other of their franchised dealers, choosing instead to establish new dealerships for distribution, sales and service of the RIVA products. Yamaha took the position that the RIVA was a motorscooter, not a motorcycle, and thus did not come within the terms of the motorcycle dealer agreements.

Many dealers protested this situation to the New Motor Vehicle Board, and in June 1984, that board determined in a ruling on several of these consolidated protests that the RIVA was a motorcycle, not a motorscooter, and was included within the Yamaha franchise agreements.

In March 1985, Van Nuys filed the within action against Yamaha in superior court, seeking damages for breach of the franchise agreement, breach of the implied covenant of good faith and fair dealing, and intentional interference with prospective business advantage. All causes of action arise

largely out of Yamaha's refusal to sell the RIVA products to Van Nuys and its sale of such products to other dealers in that geographic area.

Yamaha demurred to the first amended complaint on the ground that the court lacked jurisdiction because Van Nuys had failed to exhaust its administrative remedies before the California New Motor Vehicle Board. In its opposition, Van Nuys asserted that its action was not based on a modification of the franchise nor on the establishment of a new franchise in its area, and thus was not within the purview of the New Motor Vehicle Board. The trial court overruled the demurrer.

Yamaha petitioned this court for a writ of mandate, which was denied. The Supreme Court granted review and retransferred the matter to this court. Pursuant to its order we issued the alternative writ and order to show cause. After hearing, we now issue a peremptory writ of mandate.

## II

### JURISDICTION OF NEW MOTOR VEHICLE BOARD

The New Motor Vehicle Board is contained in the Department of Motor Vehicles and was created by the Legislature in 1973 in part "to avoid undue control of the independent new motor vehicle dealer by the vehicle manufacturer or distributor and to insure that dealers fulfill their obligations under their franchises . . . ." (Veh. Code, § 3000; Stats. 1973, ch. 996, § 1, p. 1964.) The board is empowered to "Hear and consider, within the limitations and in accordance with the procedure provided, a protest presented by a franchisee pursuant to Section 3060, 3062, 3064, or 3065." (Veh. Code, § 3050, subd. (d).)

Section 3060 provides in pertinent part: "The franchisor shall not modify or replace a franchise with a succeeding franchise if the modification or replacement would substantially affect the franchisee's sales or service obligations or investment, unless the franchisor has first given the board and each affected franchisee notice thereof at least 60 days in advance of the modification or replacement. Within 30 days of receipt of the notice, a franchisee may file a protest with the board and the modification or replacement does not become effective until there is a finding by the board that there is good cause for the modification or replacement." Section 3061 provides a nonexclusive list of circumstances the board is to consider in making its "good cause" determination.

Section 3062 provides a similar notice requirement whenever a franchisor seeks to enter into a franchise establishing an additional dealership within

a relevant market area where the same line-make is already represented or seeks to relocate an existing dealership. A franchisee may protest such establishment or relocation to the board, which will then conduct a hearing and make a good cause determination. ■ It is clear from these statutes that the board is authorized to consider and resolve disputes between a franchisor and franchisee regarding the franchisor's modification of an existing franchise or its establishment of an additional franchise within the market area of an existing franchise.

## III

### APPLICABILITY TO THIS DISPUTE

■ Van Nuys argues that its complaint does not involve either modification of its franchise or establishment of another franchise in its area, and thus the dispute is not within the authority of the New Motor Vehicle Board. This claim does not withstand scrutiny.

In its first amended complaint, Van Nuys alleges that Yamaha breached the franchise agreement by refusing to sell the RIVA products to it. Under the terms of that agreement, which refers specifically to motorcycles, Van Nuys, as dealer, agreed "to maintain at Dealer's location: (1) a prominent display of the Products which includes at least one of each of the current models of the units, and (2) a reasonable inventory of the Products which is adequate to meet the current and anticipated demand in the market area served by Dealer's location, subject only to availability." Yamaha agreed to "make reasonable efforts to supply Dealer with the Products in accordance with accepted orders; however, during any period of shortage, Yamaha shall be permitted to allocate the Products in an equitable manner." In addition, "All orders are subject to acceptance by Yamaha based on the availability of the Products and Dealer's compliance with the terms and conditions hereof."

The agreement thus contemplates that a dealer not only may, but *will* carry all of the Yamaha models, displaying at least one of each model prominently. Yamaha's obligation is to make reasonable efforts to supply the dealer with its products as ordered, which would of necessity include all of the Yamaha models, since the dealer is required to display and stock them all. The only conditions giving Yamaha the right to refuse to fill an order are lack of availability or dealer's failure to comply with the agreement. Neither of these grounds is asserted by either side in this case. Van Nuys thus asserts that Yamaha's refusal was a breach of the contract.

That asserted breach, however, also constitutes an attempted modification of the agreement. When Yamaha refused to sell the RIVA to Van Nuys and

other franchisees, it took the position that the RIVA was a motorscooter, not a motorcycle, and was therefore not included within the franchise agreement. The affected dealers naturally took the opposite position. Several of them protested Yamaha's action to the New Motor Vehicle Board. In the decision entitled Sports Cycle Center, Inc. dba Bill Krause Sports Cycle Center et al. v. Yamaha Motor Corporation, U.S.A. (Protest Nos. PR-467-83 et al. (June 8, 1984)), which is incorporated by reference into the first amended complaint, the New Motor Vehicle Board determined that the RIVA was a motorcycle, not a motorscooter, and as such was included within the products covered by the Yamaha dealer agreements. It follows that Yamaha's insistence that this particular motorcycle was not to be included within the products it would supply under the franchise agreement was a modification of that agreement. (See Champion Motorcycles, Inc., dba Champion Honda Yamaha v. Yamaha Motor Corporation, U.S.A. (Protest Nos. PR-498-83 et al. (Sept. 4, 1985)) in which the New Motor Vehicle Board reached the same conclusion in a dispute regarding the RIVA product.)

The agreement is expressly governed by California law, including Vehicle Code section 3060 which restricts Yamaha's right to modify the agreement by imposing a notice requirement on the franchisor and providing for a dealer protest and hearing mechanism before the New Motor Vehicle Board. Having concluded that Yamaha's refusal to supply the RIVA motorcycle to Van Nuys was a modification of the franchise agreement, we also conclude that Van Nuys' displeasure with this modification was a proper subject for protest to and determination by the New Motor Vehicle Board under section 3060.

■ Van Nuys also alleged that Yamaha breached the contract by establishing new dealerships for sales and servicing of the RIVA in close geographic proximity to Van Nuys' dealership. This allegation is squarely within the statutory jurisdiction of the New Motor Vehicle Board under section 3062, which provides for notice, dealer protest and good cause determination by the board when a franchisor establishes an additional franchise within the relevant market area of an existing franchise. This disagreement, too, was a proper subject for determination by the New Motor Vehicle Board.

■ Van Nuys asserts that by failing to give notice of its modification and establishment of new franchise as required by sections 3060 and 3062, Yamaha waived its right to insist that Van Nuys exhaust its administrative remedies. We do not read those sections to mean that failure of a franchisor to give the required notice in any way limits the availability of the administrative remedy to the franchisee. The notice provisions serve to establish a time frame within which a protest may be filed; once notice is served, a

franchisee has only 20 days within which to act. Where no notice is given, presumably that clock has not yet begun to run; a protest may still be filed, even though many months have passed since the modification or new franchise was initiated. All Yamaha waived by not giving notice is the ability to quickly finalize before the board its right to modify or establish a new franchise. Lack of notice does not prevent the board from exercising its powers to resolve disputes between franchisors and franchisees. The administrative remedy of a board protest remains available to Van Nuys Cycle, despite the lack of formal notice, and that remedy must be exhausted before Van Nuys can resort to judicial action.

IV

EXHAUSTION OF REMEDIES

In California it is a fundamental rule of procedure that "where an administrative remedy is provided by statute, relief must be sought from the administrative body and this remedy exhausted before the courts will act." (*Abelleira* v. *District Court of Appeal* (1941) 17 Cal.2d 280, 292 [109 P.2d 942]; *County of Los Angeles* v. *Farmers Ins. Exchange* (1982) 132 Cal.App.3d 77, 85-86 [182 Cal.Rptr. 879].) This is a jurisdictional prerequisite, not a matter of judicial discretion. (*Wilkinson* v. *Norcal Mutual Ins. Co.* (1979) 98 Cal.App.3d 307, 313 [159 Cal.Rptr. 416].) This is so even though the administrative remedy is couched in permissive language; an aggrieved party is not required to file a grievance or protest if he does not wish to do so, but if he does wish to seek relief, he must first pursue an available administrative remedy before he may resort to the judicial process. (*Morton* v. *Superior Court* (1970) 9 Cal.App.3d 977, 982 [88 Cal.Rptr. 533].)

There are several reasons for the exhaustion of remedies doctrine. "The basic purpose for the exhaustion doctrine is to lighten the burden of overworked courts in cases where administrative remedies are available and are as likely as the judicial remedy to provide the wanted relief." (*Morton* v. *Superior Court, supra,* 9 Cal.App.3d 977, 982.) Even where the administrative remedy may not resolve all issues or provide the precise relief requested by a plaintiff, the exhaustion doctrine is still viewed with favor "because it facilitates the development of a complete record that draws on administrative expertise and promotes judicial efficiency." (*Karlin* v. *Zalta* (1984) 154 Cal.App.3d 953, 980 [201 Cal.Rptr. 379].) It can serve as a preliminary administrative sifting process (*Bozaich* v. *State of California* (1973) 32 Cal.App.3d 688, 698 [108 Cal.Rptr. 392]), unearthing the relevant evidence and providing a record which the court may review. (*Westlake*

*Community Hosp.* v. *Superior Court* (1976) 17 Cal.3d 465, 476 [131 Cal.Rptr. 90, 551 P.2d 410].)

■ "The doctrine is not an absolute impediment to resort to the judicial process notwithstanding a failure to pursue administrative remedies. Well-established exceptions exist where the administrative remedy is inadequate [citation]; where it is unavailable [citation]; or where it would be futile to pursue such remedy. [Citation.]" (*Karlin* v. *Zalta, supra,* 154 Cal.App.3d 953, 979-980.)

■ Van Nuys asserts that this case comes within the futility exception, arguing that the only issue extant between the parties, whether a franchisee was entitled to receive the RIVA products under the terms of the Yamaha franchise, was already decided by the New Motor Vehicle Board in the *Champion Motorcycles* protests. This assertion demonstrates Van Nuys' misapprehension of the adjudicatory process of the board set forth in the Vehicle Code.

As noted earlier, the board is specifically empowered to "Hear and consider . . . a protest by a franchisee pursuant to Section 3060, 3062, 3064, or 3065." (Veh. Code, § 3050.) When such protest is filed under section 3060 because of a franchise modification, the board then must make a finding as to whether there is good cause for the modification; generally the modification does not become effective until after a good cause finding is made. (Veh. Code, § 3060, subd. (c).)

The *Champion* decision included two threshhold determinations applicable to our case. First, the board incorporated the decision in *Sports Cycle* that the RIVA was a motorcycle and that a Yamaha franchisee thus has the right to receive the RIVA products under the franchise. Second, the board determined that Yamaha's denial of the RIVA products to franchisee Champion was a modification of the franchise. Since these two determinations are based on the same RIVA products and Yamaha franchise agreement involved in our case, it is clear that the board's result on these issues would have been the same had Van Nuys filed a protest.

However, these two determinations do not resolve a modification dispute. Section 3060 limits a franchisor's right to modify or replace a franchise with a succeeding franchise *if* the modification or replacement would substantially affect the franchisee's sales or service obligations or investment. The board in *Champion* thus proceeded to analyze whether the modification had a substantial effect on Champion's sales or service obligations or investment, considering sales, service and financial data related specifically to the Champion dealership. The board's determination that there had been

no substantial impact on Champion's sales or service obligations or investment is a factual determination based solely on the facts of that protest, and does not foretell the conclusion the board would reach in the dispute between Yamaha and Van Nuys.

The board went on to make its ultimate determination under section 3060: whether Yamaha had good cause for modifying the Champion franchise, based on the factors enumerated in section 3061. Section 3061 places emphasis on the need for the board to consider existing circumstances in each determination of good cause, including, but not limited to, *all* seven factors relating to the specific franchisee's business. This underscores the need for case-by-case determination as to whether there is good cause to modify a franchise. Once again, the board's determination was based solely on facts relating to the two parties in that dispute; although some of the factors relating to Yamaha's marketing strategy might have some bearing on the dispute between Yamaha and Van Nuys, other factors relating to Champion are simply not pertinent.

The board's finding as to good cause for modification in the *Champion* protest is not a finding that may be transferred to this dispute involving a different franchisee, and the board's conclusion in that case is therefore not a resolution of this dispute. Similar factors preclude reliance on the board's determination as to the establishment of other RIVA dealerships in the *Champion* case.

There is a need for factual determinations in this case regarding good cause for modification of the franchise and good cause for establishment of competing franchises in the area. The New Motor Vehicle Board is the administrative forum authorized to make such determinations and provide administrative remedies; it has particular expertise which makes the administrative remedy both valuable and expedient. Having failed to exhaust its administrative remedies, Van Nuys is now precluded from seeking judicial relief. Yamaha's demurrer to those causes of action arising out of the modification of the franchise and the establishment of other franchises should have been sustained without leave to amend.

## V

### Remaining Allegations

 The first amended complaint also alleges Yamaha's bad faith abandonment of advertising and promotion of its other products due to its total emphasis on the RIVA products, and Yamaha's discriminatory allocation of regular motorcycle products to Van Nuys in retaliation for Van Nuys' ex-

pressed objections to Yamaha's policies and demands. These claims, too, fall within the jurisdiction of the New Motor Vehicle Board, which is empowered to "Consider any matter concerning the activities or practices of any person . . . holding a license as a new motor vehicle dealer, manufacturer, manufacturer branch, distributor, distributor branch, or representative . . . submitted by any person." (Veh. Code, § 3050, subd. (c).) That section provides that after such consideration, the board may do any one or any combination of several things: it may direct the Department of Motor Vehicles to conduct an investigation and make a written report, it may attempt to arbitrate the dispute, it may direct the Department to exercise its licensing power over a licensee. Van Nuys' failure to exhaust this administrative remedy is fatal to these claims as well.

## DISPOSITION

Let a writ of mandate issue ordering respondent court to vacate its order overruling the demurrer of Yamaha and enter a new and different order sustaining the demurrer without leave to amend.

Hanson (Thaxton), Acting P. J., and Devich, J., concurred.