[No. H003438. Sixth Dist. Oct. 19, 1987.]

YAMAHA MOTOR CORPORATION, U.S.A., Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY,
Respondent;
ALAN J. BARBIC, et al., Real Parties in Interest.

**COUNSEL**

Bruce L. Ishimatsu, Gregory J. Thwaite and Kelley, Drye & Warren for Petitioner.

Michael M. Sieving and Sam W. Jennings as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

Ardell Johnson, John W. Clark and Clark & Korda for Real Parties in Interest.

## OPINION

CAPACCIOLI, J.—Petitioner, Yamaha Motor Corporation, U.S.A. (Yamaha), seeks a writ of mandate to compel the superior court to vacate its order overruling Yamaha's demurrer to the cross-complaint against it filed by real parties in interest Alan and Michele Barbic, former Yamaha dealers, and to enter an order sustaining the demurrer without leave to amend. Yamaha argues that the cross-complaint is barred either by the Barbics' failure to pursue and exhaust an administrative remedy before the New Motor Vehicle Board (Board), or alternatively, by the doctrines of res judicata and collateral estoppel based on the dismissal with prejudice of the Barbics' earlier protest to the Board.

We have concluded failure to exhaust their administrative remedy before the Board bars the Barbics' cross-complaint, for reasons we shall state.

### FACTS

The complaint which began this action was filed against the Barbics and others by the entity ITT Commercial Finance Corp. (ITT), not a party to this writ proceeding, but described by Yamaha as its primary finance company and flooring agent. ITT sued the Barbics on November 25, 1985, for breach of financing agreement, recovery of possession of personal property, breach of guarantee agreement, and related damages. ITT sued as assignee of Yamaha's rights in a written inventory-financing agreement between Yamaha and the motorcycle dealership Gilroy Yamaha, Inc., a Yamaha franchisee. The Barbics were sued individually as guarantors of Gilroy Yamaha'a obligations and as individual signers of wholesale financing agreements giving ITT a security interest in the retail inventory of two dealerships operated by the Barbics (Gilroy Yamaha and Yamaha of San Jose).

The Barbics cross-complained against ITT and Yamaha, charging Yamaha with breach of contract, breach of the implied covenant of good faith and fair dealing, fraud, negligent misrepresentation, interference with business relations, and unlawful restraint of trade. The Barbics alleged that Yamaha represented to the Barbics that so long as they made payments on their contractual obligations the financing contracts would remain in effect,

but in violation of those promises Yamaha unjustifiably terminated the contracts, sued for past due amounts, and sought ex parte orders to seize complainants' inventories, thus effectively putting them out of business. Further, Yamaha knowingly interfered with the Barbics' attempt to sell a dealership (Yamaha of San Jose) to one Stephen McBee, by putting complainants out of business and communicating with McBee to discourage him from going through with the sale transaction. They also allege restraint of trade causes against Yamaha and ITT. The cross-complaint was first filed February 23, 1987, and later amended.

On February 7, 1986, the Barbics filed a protest notice with the Board charging that Yamaha invalidly terminated their dealership sales agreement and refused to continue the franchise. The protest also complained of Yamaha's willfully and collusively having prevented the Barbics from timely completing a sale of their San Jose business to McBee. The Barbics requested a hearing under the provisions of California Vehicle Code section 3066.[1]

On April 18, 1986, the Barbics dismissed this protest with prejudice. They have since contended, in opposing Yamaha's demurrer to their cross-complaint, that they did so under pressure from Yamaha which would not consent to the sale to McBee unless Barbics dismissed the protest, among other things.

Yamaha demurred to the Barbics' cross-complaint for these reasons: (1) lack of jurisdiction because of failure to exhaust administrative remedies before the Board; (2) collateral estoppel or res judicata because of the dismissal of the protest with prejudice. The trial court overruled the demurrer as to the Barbics. (The ruling was different as to another cross-complainant, Gilroy Yamaha, not a party to this proceeding, and not germane to this discussion.)

In opposing the demurrer, the Barbics detailed a history of misfortunes which had unfortunately beset them, including loss of their home in the 1985 Lexington Reservoir fire and embezzlement by the manager of Gilroy Sports Center, one of the businesses involved in this litigation. Then, they alleged, Yamaha and ITT turned their attempted sales of their businesses into distress sales by instituting foreclosures and by interfering with their attempted sale of the San Jose dealership to McBee, telling him he should allow the store to be foreclosed upon because his other store would then acquire the Barbics' market share by default. Further, when they persuaded him to buy at a depressed price, Yamaha would not consent to the sale until they promised to dismiss their Board protest; obtain a personal debt guaran-

---

[1] All further statutory references are to the Vehicle Code unless otherwise specified.

tee from their parents secured by the latters' home; and release Yamaha from all liability in the transaction.

Also, the Barbics alleged the Board could not provide an effective remedy for the harm alleged in their cross-complaint against Yamaha, because although the Board could prevent improper termination of their franchise (§ 3060 et seq.), it could not grant tort damages as prayed for here. Also, they contended since they no longer had a franchise relationship with Yamaha at the time of filing the cross-complaint, they no longer had access to any administrative remedy, therefore the exhaustion doctrine should not bar their claim.

Finally, they claimed res judicata and collateral estoppel do not apply here because there was no litigation of the dispute before the agency on its merits. (Citing, e.g., *Goddard* v. *Security Title Ins. & Guar. Co.* (1939) 14 Cal.2d 47, 51 [92 P.2d 804].)

### DISCUSSION

The Legislature has created a broad statutory scheme to regulate the franchise relationship between vehicle manufacturers and dealers. (§§ 3000 to 3069, 11700 et seq.) Specifically applying here is section 3050, subdivision (c), giving the Board authority to consider "any matter concerning the activities or practices of any person applying for or holding a license as a new motor vehicle dealer, manufacturer . . . distributor . . . pursuant to Chapter 4 (commencing with section 11700) of Division 5 submitted by any person. . . ." The Board is empowered to direct investigations of such matters; undertake arbitration or settlement; and exercise any and all of its license revocation, suspension, and related powers with respect to licensees before it. (*Ibid.*) The statutes provide a full administrative remedy, including powers of subpoena, discovery, and hearing, and ultimate judicial review. (§§ 3050.1 et seq.; 3068.) Sections 3060 and 3061 specifically regulate termination of franchises; section 3062 deals with relocating dealerships; and section 3050, subdivision (c), quoted *ante,* specifically refers to activities pursuant to chapter 4, section 11700 et seq., which chapter in turn includes sections 11713.2 and 11713.3. These statutes define unlawful acts of a manufacturer or distributor, including, among others, preventing or requiring changes in the dealership's capital structure; preventing or requiring the sale or transfer of any part of the dealership, or unreasonably withholding consent to such sale; preventing a dealer from receiving fair and reasonable compensation for the value of the franchised business; coercing a dealer into an agreement or into doing any prejudicial act by threatening to cancel the franchise.

There is clearly a considerable overlap between the allegations of the Barbics' cross-complaint against Yamaha and the kinds of conduct regulated or proscribed under the foregoing statutes.

The decision in *Yamaha Motor Corp.* v. *Superior Court* (1986) 185 Cal.App.3d 1232 [230 Cal.Rptr. 382] applied the exhaustion doctrine where a motorcycle dealer sued Yamaha for breach of the franchise agreement, breach of the implied covenant of good faith and fair dealing, and intentional interference with prospective business advantage arising out of Yamaha's refusal to sell a new product to the dealer and its sale to other dealers in the area. The court held that failure to seek relief before the Board barred the suit. The allegations of the complaint were held a proper subject of protest to the Board within sections 3060 and 3062.

■ The *Yamaha* decision, *supra,* points out the fundamental importance of the exhaustion doctrine in California. It is jurisdictional. (*Abelleira* v. *District Court of Appeal* (1941) 17 Cal.2d 280, 292 [109 P.2d 942, 132 A.L.R. 715].) Whether or not the administrative remedy is permissive and whether or not it may afford complete relief, the complainant must exhaust it before seeking judicial assistance. The reasons for the rule are to lighten the burden on courts by providing the benefit of the agency's expertise in preparing a full record and sifting the evidence. (*Yamaha, supra,* 185 Cal.App.3d at p. 1240, citing *Morton* v. *Superior Court* (1970) 9 Cal.App.3d 977, 982 [88 Cal.App.3d 533]; *Karlin* v. *Zalta* (1984) 154 Cal.App.3d 953, 980 [201 Cal.Rptr. 379].) Many cases support this proposition; "this legislatively mandated policy promoting the resolution of disputes by specialized boards and fostering judicial economy has been well explained . . . ." (*Robinson* v. *Department of Fair Employment & Housing* (1987) 192 Cal.App.3d 1414, 1417; see also cases cited at pp. 1416-1417.)

■ The Board filed an amicus curiae brief asserting that under section 3050, subdivision (c), the charged conduct in the Barbics' cross-complaint is substantially within the jurisdiction of the Board. The Board asserts that these matters concern the activities or practices of Yamaha, a Board licensee, and it is evident that much, if not all, of the conduct charged against Yamaha is within the scope of the statutory prohibitions outlined in sections 11713.2 and 11713.3. We agree. The gravamen of the Barbics' claim— unfair dealings with respect to the franchise, unauthorized termination of the relationship, and unwarranted interference in the sale of a dealership— consists of activities specifically forbidden by the above cited provisions. Further, the charge Yamaha applied economic duress to compel dismissal of the Barbics' protest would appear to be a matter directly concerning the agency, constituting, if true, a fraud on the agency, just as depriving a litigant of a fair judicial hearing may constitute a fraud on the court.

The Board also asserts that a purpose of the bill creating the Board was to "replace the courts with the . . . board as a preliminary forum of franchise or other disputes between dealers and manufacturers or distributors. Any decision made by the Board would be final, subject only to judicial review."

(Enrolled Bill Rep., Dept. of Finance, Assem. Bill No. 225 (1973-1974 Reg. Sess.).)

This purpose is identical to the reason for the exhaustion doctrine, to permit the expert agency to perform the preliminary evidentiary screening and early dispute resolution before invoking judicial assistance. As stated, this is a rule of jurisdictional dimension. (*Abelleira, supra,* 17 Cal.2d 280; *Robinson, supra,* 192 Cal.App.3d 1414, and cases cited therein.)

The Barbics argue the Legislature has authorized them an independent judicial remedy in section 11726. That statute provides a licensee suffering pecuniary loss by virtue of various acts of noncompliance with applicable Vehicle Code provisions (including § 3052 et seq.) "may recover damages and reasonable attorney fees therefor in any court of competent jurisdiction. Any such licensee may also have appropriate injunctive relief in any such court." They argue this language expressly authorizes them to bring their tort claims against Yamaha into a court, the only forum which is authorized to award them money damages for such derelictions.

We have found no cases expressly construing section 11726. However, it is significant that the *Yamaha* decision, *supra,* 185 Cal.App.3d 1232 does not refer to section 11726 at all, but does state categorically that whether or not the administrative remedy can grant complete relief, it must nevertheless be exploited first, so that, as discussed above, the agency can perform preliminary screening and dispute resolution functions for the court. ▮ "Even where the administrative remedy may not resolve all issues or provide the precise relief requested by a plaintiff, the exhaustion doctrine is still viewed with favor 'because it facilitates the development of a complete record that draws on administrative expertise and promotes judicial efficiency.' [Citation.]" (*Yamaha, supra,* 185 Cal.App.3d at p. 1240.)

▮ Further, section 11726 provides a judicial remedy for loss caused by any willful failure of a licensee to obey stated sections of the Vehicle Code, including those referenced above (commencing, respectively, with §§ 3052, and 11700), or for similar disobedience of a department regulation, rule or Board decision. The statute immediately follows the provisions such as sections 11713.2 and 11713.3, defining unlawful acts of a licensee - which violations are specifically remediable by protest under section 3050 et seq. Clearly the statute was intended to provide judicial enforcement of department and Board decisions, to put teeth in enforcement of the Board legislation. Its specific reference to the protest and hearing procedures of section 3050 et seq. suggests the Legislature intended the agency, in the first instance, to determine whether any such violations had been committed, before an aggrieved claimant would be authorized to invoke judicial relief. The Barbics cite no evidence indicating an intent to provide, in section

11726, an independent judicial remedy which could be invoked at will, without first resort to the section 3050 procedures. Nor would such an interpretation comport with the general development of administrative law doctrine in this state, which, as has been exhaustively discussed elsewhere, strongly encourages first resort to the administrative agency remedy before a litigant may seek judicial relief. It seems plain to us that section 11726 contemplates a prior administrative finding that a licensee is in violation of the statutes or Board rules, before the judicial relief there provided may be invoked.

The Board brief emphasizes the particular sensitivity of the Board to the legislative mandate that the interest of the public be considered and protected in the handling of vehicle franchise matters. (See §§ 3061, 3063.) A court would also need to take such factors into account in deciding a civil contract or tort claim such as that made by the Barbics here, but it can benefit by the special expertise of the Board in such matters, its greater familiarity with vehicle franchise practices and procedures throughout the state and its greater ability, in light of the large number of such claims it must oversee, to achieve fair and uniform results.

The Barbics argue pursuit of their administrative remedy now would be futile because they no longer have a franchise relationship with Yamaha and the Board is not empowered to grant them any present relief. If true, that result is unfortunate but irrelevant to the application of the exhaustion doctrine, which requires resort to the available remedy, at the time it is available, so as to make use of the agency's expertise and develop a preliminary record for the court. Again, this requirement is jurisdictional in California. (See *Yamaha, supra,* 185 Cal.App.3d 1232 and *Robinson, supra,* 192 Cal.App.3d 1414.)

Further, it is not absolutely certain that the Barbics no longer may resort to the administrative remedy. In light of their claim that Yamaha pressured them into dismissing their administrative protest, they could ask the Board to reinstitute proceedings, by a procedure analogous to recall of a remitittur or motion to set aside a judgment, by reason of impermissible conduct depriving them of their administrative forum. If such relief were granted, they could then proceed to develop a record before the Board. Therefore it is possible that even now, their presentation of this matter to the Board would not be entirely futile.

Finally, it would completely eviscerate the exhaustion doctrine if we were to hold that a party could avoid its application by simply terminating the regulated relationship—here, the franchise—before resorting to a lawsuit. The Barbics were in such a relationship with Yamaha, they had a right to and did invoke the Board administrative remedy. Their failure to complete the process, however, bars their present claim on the court's facilities.

We give great weight to the agency's position here that it did have jurisdiction and that the Barbics should have brought the dispute there first. The Board's position undercuts the Barbics' argument that the administrative remedy would have been meaningless and futile.

Our conclusion that the demurrer of Yamaha should have been sustained for failure of the Barbics to exhaust their administrative remedies makes it unnecessary to discuss Yamaha's second contention that res judicata or collateral estoppel applies.[2]

## DISPOSITION

Real parties in interest have been notified that a peremptory writ in the first instance could be issued here, and they have filed opposition. The peremptory writ of mandate will issue in the first instance. (Code Civ. Proc., § 1088; *Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 177-182 [203 Cal.Rptr. 626, 681 P.2d 893].)

Let a writ of mandate issue ordering respondent court to vacate its order overruling Yamaha's demurrer and enter a new and different order sustaining the demurrer without leave to amend.

Agliano, P. J., and Premo, J.,* concurred.

The petition of real parties in interest for review by the Supreme Court was denied January 7, 1988. Kaufman, J., was of the opinion that the petition should be granted.

---

[2] The parties do not raise the issue whether the exhaustion doctrine should be differently applied because the Barbics here are proceeding by way of cross-complaint, rather than having been the original instigators of the lawsuit. Although there is some authority for not requiring resort to administrative remedies when one faces criminal sanctions (see, e.g., *Moore* v. *East Cleveland* (1977) 431 U.S. 494, 497, fn. 5 [52 L.Ed.2d 531, 536, 97 S.Ct. 1932]; *McKart* v. *United States* (1969) 395 U.S. 185, 192-203 [23 L.Ed.2d 194, 204-209, 89 S.Ct. 1657]), and although we can conceive of situations where requiring a civil litigant to exhaust administrative remedies before raising defenses to the lawsuit could be unfair, here it seems the Barbics' cross-complaint, against an entity not a party to the original lawsuit against the Barbics, is the essential equivalent of an original complaint, affirmatively seeking to bring matters before the court which should first have been submitted to agency scrutiny.

* Assigned by the Chairperson of the Judical Council.