[No. B060651. Second Dist., Div. Three. Sept. 14, 1992.]

RAY FLADEBOE LINCOLN-MERCURY, INC., Plaintiff and Appellant,
v.
NEW MOTOR VEHICLE BOARD, Defendant and Respondent;
JAGUAR CARS INC., et al., Real Parties in Interest.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for partial publication. The Factual and Procedural Background, Contentions and parts 1 and 2 of the Discussion have been omitted.

**COUNSEL**

Hoecker, McMahon & Wade, Gary W. Hoecker and Thomas K. Buck for Plaintiff and Appellant.

Daniel E. Lungren, Attorney General, Linda A. Cabatic and Susan P. Underwood, Deputy Attorneys General, for Defendant and Respondent.

Irell & Manella, Morgan Chu and Wayne Barsky for Real Parties in Interest.

**OPINION**

KLEIN, P. J.—Plaintiff and appellant Ray Fladeboe Lincoln-Mercury Inc., doing business as Ray Fladeboe British Motor Cars (Fladeboe), appeals the judgment of the trial court denying its consolidated petition for writ of administrative mandate. (Code Civ. Proc., § 1094.5.) By its consolidated petition Fladeboe sought to overturn the decision of defendant and respondent New Motor Vehicle Board (the Board) which (1) allowed real party in interest Jaguar Cars, Inc. (Jaguar) to terminate Fladeboe's Jaguar dealership, and (2) rejected Fladeboe's petition for damages arising out of Jaguar's assertedly wrongful conduct in the allocation of vehicles among its dealers.

We conclude the trial court properly denied Fladeboe's consolidated petition because substantial evidence supports the Board's findings, Fladeboe received a full and fair hearing before the Board, and the Board had jurisdiction to hear Fladeboe's petition claims.

FACTUAL AND PROCEDURAL BACKGROUND-DISCUSSION 2.*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

3.   *The Board had jurisdiction to decide Fladeboe's petition claims.*

█   Fladeboe contends the Board does not have jurisdiction under Vehicle Code section 3050, subdivision (c)(2), to arbitrate Fladeboe's claim, asserted by petition filed before the Board, that Jaguar wrongfully underallocated vehicles to Fladeboe.[5] That section states in part the Board shall "[c]onsider any matter concerning the activities or practices of any person applying for or holding a license as a new motor vehicles dealer, manufacturer, manufacturer branch, distributor, distributor branch, or representative . . . submitted by any person. . . . After such consideration, the board may do any one or any combination of the following: [¶] (1) Direct the department to conduct investigation of matters that the board deems reasonable, and make a written report on the results of the investigation to the board . . . . [¶] (2) Undertake to mediate, arbitrate, or otherwise resolve any honest difference of opinion or viewpoint existing between any member of the public and any new motor vehicle dealer, manufacturer, manufacturer branch, distributor branch, or representative. [¶] (3) Order the department to exercise any and all authority or power that the department may have with respect to the issuance, renewal, refusal to renew, suspension, or revocation of the license of any new motor vehicle dealer, . . ." (§ 3050.)

Fladeboe asserts section 3050, subdivision (c)(2), addresses only differences of opinion between any "member of the public and any new motor

---

*See footnote, *ante*, page 51.
[5]All further statutory references are to the Vehicle Code.

vehicle dealer, manufacturer, manufacturer branch, distributor branch, or representative." Fladeboe argues "member of the public" refers to individuals served by the new motor vehicle industry. Fladeboe claims the disputes described in section 3050, subdivision (c)(2), do not include differences between new motor vehicle businesses. Fladeboe contends the directive to "consider" matters under subdivision (c) is to be contrasted with subdivisions (b) and (d) of section 3050 which direct the Board to "hear and consider" protests and appeals by franchisees and licensees.

Although the Board possesses only such power as has been conferred upon it by statute (*BMW of North America, Inc.* v. *New Motor Vehicle Bd.* (1984) 162 Cal.App.3d 980, 994 [209 Cal.Rptr. 50]), two published cases (*Yamaha Motor Corp.* v. *Superior Court* (1986) 185 Cal.App.3d 1232 [230 Cal.Rptr. 382] (*Yamaha I*), and *Yamaha Motor Corp.* v. *Superior Court* (1987) 195 Cal.App.3d 652 [240 Cal.Rptr. 806] (*Yamaha II*)) have ruled the Board has administrative authority over the type of dispute presented here.

In *Yamaha I*, Yamaha refused to sell Riva motor scooters to Van Nuys Cycle, a Yamaha motorcycle franchisee. Van Nuys Cycle protested Yamaha's refusal to the Board and filed a superior court action against Yamaha for damages. The *Yamaha I* court held Van Nuys Cycle had failed to exhaust its administrative remedies with respect to the protest before the Board.

*Yamaha I* also considered Van Nuys Cycle's claims Yamaha had abandoned promotion of its other products in bad faith in order to promote the Riva and had discriminated against Van Nuys Cycle in the allocation of motorcycles in retaliation for its objections to Yamaha's policies. *Yamaha I* found "[t]hese claims, too, fall within the jurisdiction of the . . . Board, which is empowered to 'Consider any matter concerning the activities or practices of any person . . . holding a license as a new motor vehicle dealer, manufacturer, . . . or representative . . . submitted by any person.' (Veh. Code, § 3050, subd. (c).) That section provides that after such consideration, the board may do any one or any combination of several things: it may direct the Department of Motor Vehicles to conduct an investigation and make a written report, it may attempt to arbitrate the dispute, it may direct the Department to exercise its licensing power over a licensee. Van Nuys' failure to exhaust this administrative remedy is fatal to these claims as well." (*Yamaha I*, 185 Cal.App.3d at p. 1243.)[6]

In *Yamaha II*, Yamaha's financing company sued the Barbics for breach of a finance agreement. The Barbics cross-complained against Yamaha for,

---

[6]At the time of the *Yamaha I* decision, section 3050, subdivision (c)(2), permitted the Board "to arbitrate or resolve" differences of opinion. By amendment effective January 1, 1988, the

inter alia, breach of contract, fraud, and unlawful restraint of trade. When the trial court overruled Yamaha's demurrer to the cross-complaint, Yamaha sought a writ of mandate. *Yamaha II* found the matter in dispute fell within the Board's power under section 3050, subdivision (c), which gives "the Board authority to consider 'any matter concerning the activities or practices of any person applying for or holding a license as a new motor vehicle dealer, manufacturer . . . distributor' " submitted by any person. (*Yamaha II*, 195 Cal.App.3d at p. 656.) *Yamaha II* concluded the Barbics' cross-complaint was barred for failure to exhaust their administrative remedies before the Board.

In its reply brief, Fladeboe argues *Ri-Joyce, Inc.* v. *New Motor Vehicle Bd.* (1992) 2 Cal.App.4th 445 [3 Cal.Rptr.2d 546], undermines the holdings of *Yamaha I* and *II.* In that case Ri-Joyce, a Santa Rosa Mazda dealer, protested the establishment of a new Mazda dealer in Petaluma. The Board dismissed the protest relying on *BMW of North America* v. *New Motor Vehicle Bd., supra*, 162 Cal.App.3d 980, a case in which the franchisor reserved the unqualified power to appoint new dealers. Although *Ri-Joyce* agreed disputes concerning the establishment of new dealerships within the trading area of an existing dealer are matters within the Board's jurisdiction, the trial court directed the Board to consider the protest because Mazda had not retained the unqualified power to appoint new dealers.

*Ri-Joyce* stated, "To the extent Ri-Joyce may be relying upon an estoppel or perhaps a claim of fraud [to establish its entitlement to an exclusive franchise], the argument is addressed to the wrong forum. The Board is a quasi-judicial administrative agency of limited jurisdiction. [Citation.] It does not have plenary authority to resolve any and all disputes which may arise between a franchisor and a franchisee. The Board's jurisdiction under section 3060 encompasses disputes arising over the attempted termination, replacement or modification of a franchise agreement. Claims arising from disputes with other legal bases must be directed to a different forum." (*Ri-Joyce, Inc., supra*, 2 Cal.App.4th at p. 455.)

To the extent *Ri-Joyce* holds the Board lacks authority over disputes involving termination of franchises whenever a claim of impropriety is based upon estoppel or fraud, we disagree.

*Ri-Joyce* failed to mention or consider *Yamaha I* and *II.* Further, segregation of claims otherwise proper for the Board's consideration, based upon the

Legislature amended this section to allow the Board to "mediate, arbitrate, or otherwise resolve" such disputes.

underlying basis of the claim, would allow franchisees to circumvent the jursidiction of the Board through artful pleading. The *Ri-Joyce* rule also would require franchisees to pursue simultaneous actions before the Board and in state court and would wreak havoc with the exhaustion of remedies doctrine and defeat the public policy which favors resolution of franchise disputes before the administrative agency.

Accordingly, we conclude, based on the holdings of *Yamaha I* and *Yamaha II*, that the Board has jurisdiction over Fladeboe's petition.

### CONCLUSION

Because we agree the dealer rationalization program (the DRP) constituted a reasonable and rational response to the financial crisis faced by Jaguar, and that Jaguar implemented the DRP in a fair and nondisrciminatory fashion, Fladeboe's primary contention fails. The Board's decision and its findings are supported by substatial evidence and thus must be affirmed by this court.

Additionally, we conclude Fladeboe received a full and fair hearing before the Board and the Board had jurisdiction over Fladeboe's petition claims.

### DISPOSITION

The judgment is affirmed. Fladeboe to bear costs on appeal.

Croskey, J., and Hinz, J., concurred.

Appellant's petition for review by the Supreme Court was denied December 31, 1992.