616 So.2d 512 (1993)
BARRY COOK FORD, INC., Appellant, Cross-Appellee,
v.
FORD MOTOR COMPANY, Appellee, Cross-Appellant.
No. 91-2758.
District Court of Appeal of Florida, First District.
March 18, 1993.
*513 William C. Owen and R. Vincent Russo of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tallahassee, for appellant, cross-appellee.
Dean Bunch of Cabaniss, Burke & Wagner, P.A., Tallahassee, for appellee, cross-appellant.
SMITH, Judge.
Appellant, Barry Cook Ford, Inc., challenges a summary judgment rendered in favor of the appellee in a suit seeking damages against Ford Motor Company. Cross-appellant, Ford Motor Company, argues that the lower court erred in denying its motion to dismiss Barry Cook Ford's amended complaint. We affirm the cross-appeal without further comment. As for the appeal, we affirm the result reached below for the following reasons.
In 1987, Barry Cook Ford, Inc. ("Cook Ford") and Ford Motor Company ("Ford") executed a franchise agreement[1] whereby Barry Cook Ford, Inc. became an authorized Ford dealer in Winter Haven. The franchise agreement specified the terms under which the franchise could be terminated. Included in the termination grounds was the following provision:
TERMINATION OR NONRENEWAL OF AGREEMENT
.....
17(b) By Company Due to Events Controlled by Dealer. The following represent events which are substantially within the control of the Dealer and over which the Company has no control, and *514 which are so contrary to the intent and purpose of this agreement as to warrant its termination or nonrenewal: ...
(4) Conviction in a court of original jurisdiction of the Dealer or any person named in paragraph F for any violation of law, or any conduct by any such person unbecoming a reputable businessman, or disagreement between or among any persons named in paragraph F, which in the Company's opinion tends to affect adversely the operation or business of the Dealer or the good name, goodwill or reputation of the Dealer, other authorized dealers of the Company, the Company, or COMPANY PRODUCTS.
In paragraph F of the agreement, R. Barry Cook is listed as the operator of the franchise; R. Barry Cook and Lawrence Braisted are listed as owners. Apparently, at all times pertinent to this litigation, Braisted no longer had an interest in the business.
In May 1988, Ford sent notice to Cook Ford of its intent to terminate the franchise. The ground given for the intended termination was that the Dealer, i.e., Barry Cook Ford, Inc., had engaged in "conduct ... unbecoming a reputable businessman." Such conduct is a basis for termination under the agreement, and Ford alleged that such conduct occurred when the Dealer falsely represented to customers that leased vehicles could be subleased, that leased vehicles could be returned within a year without penalty, and that leased vehicles were not actually leased but were sold.
Thereafter, in August 1988, Cook Ford filed a complaint with the Department of Highway Safety and Motor Vehicles (DHSMV) on the authority of section 320.641, Florida Statutes (1987), seeking a determination of whether the proposed termination was unfair or prohibited. DHSMV transferred the case to DOAH for a hearing.
Following the filing of its complaint with DHSMV, Cook Ford filed a complaint in the circuit court seeking an injunction, a declaratory judgment and damages against Ford on the ground that the proposed termination was unfair under section 320.697, Florida Statutes. The essence of Cook Ford's position in both the administrative proceeding and the circuit court action was that Ford had no authority to terminate a franchise for "conduct unbecoming a reputable businessman" when the conduct alleged to be unbecoming was committed by the Dealer. Cook Ford maintains that under this particular provision of the franchise agreement, only the conduct of "persons named in paragraph F," which does not include the Dealer, Barry Cook Ford, Inc., can be a basis for termination.
In the administrative proceeding, Cook Ford filed a motion for a recommended order seeking a determination, based upon the pleadings, that Ford's termination letter did not on its face state grounds for termination of the franchise agreement. The hearing officer rejected Cook Ford's recommended order, specifically noting in the order her disagreement with Cook Ford's interpretation of paragraph 17(b) of the franchise agreement. In the order, the hearing officer found that the term "person," as used in the phrase "any conduct by any such person unbecoming a reputable businessman," found in paragraph 17(b)(4) of the franchise agreement, was not limited to the individual persons named in paragraph F; rather, the hearing officer concluded, a "Dealer" could be a "person" in such context. The hearing officer's order explained further:
"Such person" refers to the entire first phrase of the sentence which includes both the Dealer, a corporate person under Michigan and Florida law, and "any person named in paragraph F." If "person" were limited only to those named in paragraph F, there would have been no need for the qualifying language attached to the term "persons" in the phrase "... or disagreement between or among any persons named in paragraph F, ... ."
Following entry of this order, the administrative proceeding was continued while Cook Ford negotiated a transfer of the dealership. The transfer was eventually approved by Ford and was completed. *515 Thereafter, before completion of the administrative proceeding and entry of a final order, Cook Ford voluntarily dismissed the administrative proceeding on June 12, 1989.
Meanwhile, in the circuit court case still pending, Cook Ford filed an amended complaint containing four counts. In Count I, Cook Ford sought damages against Ford for anticipatory breach of contract. In Count II, Cook Ford sought damages for a violation of section 320.64(7), Florida Statutes (1987).[2] In Counts III and IV, R. Barry Cook sought damages as a third party beneficiary. Subsequently, these latter two counts were voluntarily dismissed. Ford moved to dismiss the amended complaint on a variety of grounds, including the ground that Counts I and II failed to state a cause of action. The motion to dismiss was denied.
Thereafter, both parties moved for summary judgment, again on a variety of grounds. After receiving memoranda of law and hearing argument of counsel, the lower court granted summary judgment in favor of Ford. In the summary judgment, the lower court held that Ford's notice of termination, alleging conduct by the Dealer, but not attributing such conduct to the principal, R. Barry Cook, was not inconsistent with the franchise agreement, and hence, was not on its face unfair or prohibited. The trial court also ruled that inasmuch as Cook Ford's entire case was based upon this alleged inconsistency, Ford was entitled to summary judgment on that ground alone. The lower court also held, however, that the question of whether Ford's intended termination was fair was within the exclusive jurisdiction of DHSMV, and that Cook Ford failed to exhaust its administrative remedy. Thus, the lower court ruled, because Cook Ford voluntarily dismissed its administrative action, it waived its right to file an action at law for unfair termination.
Cook Ford does not assert on appeal that questions of fact precluded summary judgment. Instead, Cook Ford takes issue with the lower court's ruling that termination on the grounds asserted by Ford in its notice of termination was not prohibited by the franchise agreement and with the lower court's finding that Cook Ford waived its right to proceed in circuit court. Cook Ford also maintains the trial court's rulings on the exclusiveness of remedy and exhaustion of remedies were incorrect.
Sections 320.60 through 320.70, Florida Statutes (1987), establish regulations for automobile manufacturers, importers, distributors, and dealers. Section 320.641(1)(a) requires a manufacturer  a "licensee" under the nomenclature of Chapter 320  to give written notice to a dealer of the manufacturer's intent to terminate a franchise at least 90 days before the termination is to take effect. There is no dispute in the instant case that Ford did give timely notice.
Section 320.641(3) provides that any motor vehicle dealer whose franchise agreement is discontinued, canceled, not renewed, modified or replaced may file within the 90 day period a complaint with DHSMV for a determination of whether such action is "unfair or prohibited."[3] The filing of a complaint stays the termination until a final determination as to the propriety of the intended termination is made by DHSMV. Section 320.641(5) provides that if the dealer prevails, he shall have a cause of action against the licensee for attorney fees and costs. The dealer also has a cause of action under sec. 320.697, which provides:
Any person who has suffered pecuniary loss or who has been otherwise adversely affected because of a violation by a licensee of ss. 320.60-320.70, notwithstanding the existence of any other remedies under ss. 320.60-320.70, has a cause of action against the licensee for damages *516 and may recover damages therefor in any court of competent jurisdiction in an amount equal to 3 times the pecuniary loss, together with costs and a reasonable attorney's fee to be assessed by the court.
We agree with appellant that the trial court's rulings on exclusiveness of the administrative remedy and the exhaustion doctrine were in error, as was the court's conclusion that by voluntarily dismissing the administrative proceeding appellant waived its right to a circuit court action for damages. We agree with appellee Ford, however, that in view of the narrow issue presented to the trial court for ruling by Cook Ford, the trial court was correct in granting summary final judgment in favor of appellee Ford.

I.
There is no specific provision in Chapter 320 assigning to DHSMV the exclusive jurisdiction to consider the question of whether a threatened franchise termination is unfair or otherwise impermissible. It is clear that the legislature has the power to prescribe the jurisdiction of administrative agencies, and may prescribe remedies that are concurrent with or in addition to those available in the courts. See, 2 Fla.Jur.2d Administrative Law, § 205 (1993).
Examination of Chapter 320 reveals that both administrative and court actions are available to dealers for the purpose of enforcing compliance by licensees and that these remedies are, in some instances, both alternative and cumulative. For example, the provision for stay of a threatened termination found in section 320.641(3) is not exclusive, since under 320.695, the dealer may apply to the circuit court for the issuance of a temporary or permanent injunction against a licensee to prohibit a violation of any provision of sections 320.60-320.70, and the injunction shall be issued without bond. The only limitation on the availability of injunctive relief in the circuit court is that this remedy "shall not be applicable to any motor vehicle dealer after final determination by the Department under s. 320.641(3)." § 320.695, Fla. Stat. (1987) (emphasis supplied).
Similarly, while resort may be had to the administrative forum pursuant to section 320.641(3) to determine whether a threatened termination is "unfair or prohibited," the dealer may also base a cause of action for damages pursuant to section 320.697 upon a licensee's violation of section 320.64(7) by showing that the licensee threatened "unfairly ... or without just provocation," to cancel a franchise agreement. Moreover, the statute providing for a civil damage action requires only a "prima facie showing" by the dealer that a violation by the licensee has occurred, whereupon the burden of proof "shall be upon the licensee to prove that such violation or unfair practice did not occur." § 320.697, Fla. Stat. (1987). Given this statutory language, it cannot be seriously contended that the statute contemplates a court action for damages only after a violation has been found to exist by the DHSMV in an administrative proceeding. Significantly, there is no statutory limitation on the availability of this action for civil damages, plus costs and attorney's fees, but on the contrary, by its own terms the statute authorizes court action "notwithstanding the existence of any other remedies under ss. 320.60-320.70... ."[4]Id.

II.
Just as we find no basis for the trial court's ruling regarding exclusiveness of the administrative remedy, we find no support for the court's determination that Cook Ford's court action for damages was barred by failure to exhaust administrative remedies. We agree, as Cook Ford appropriately points out, that once transfer of the dealership was made during the pendency of the section 320.641(3) administrative proceeding, Cook Ford was not required to continue to seek relief in the *517 administrative forum, but could avail itself of the independent statutory action for treble damages under section 320.697. One of the exceptions to the doctrine of exhaustion, applicable here, is that a party is not required to exhaust administrative remedies if they would be of no avail, such as when a plaintiff seeks monetary damages that an administrative forum has no authority to award. See, 1 Fla.Jur.2d Administrative Law § 148; and see, Southern Bell Telephone & Telegraph Co. v. Mobil America Corp., Inc., 291 So.2d 199 (Fla. 1974); Northeast Airlines, Inc. v. Weiss, 113 So.2d 884 (Fla. 3d DCA), cert. denied, 116 So.2d 772 (Fla. 1959).

III.
Much of the above discussion also applies to the issue of waiver. The trial court ruled, at the urging of appellee Ford, that by first resorting to, and then abandoning, the administrative proceeding under section 320.641(3), Cook Ford waived its right to seek a court ruling that the threatened termination of the franchise was unfair or prohibited. As above-noted, the statutory scheme does not lend itself to this interpretation, but in fact indicates the opposite. The only waiver provision found is the one incorporated into section 320.695, noted above, which precludes resort to a court for an injunction after final determination by DHSMV under section 320.641(3). Here, as recognized by the trial court, there was no final determination in the administrative hearing, and the trial court correctly ruled that the defenses of res judicata or collateral estoppel did not apply. Moreover, Ford agreed to the transfer of the franchise during pendency of the administrative proceeding, and stipulated to Cook Ford's dismissal of its administrative complaint. Additionally, in connection with the transfer, the parties executed a release which  according to a ruling of the trial court which is not challenged on appeal  did not preclude Cook Ford's continuation of its pending civil action in the circuit court. Under these circumstances, we find no support for Ford's contention that Cook Ford's action for damages was waived.

IV.
Turning finally to the trial court's ruling on the merits, we first consider the specific issue presented to the trial court for ruling, and the posture of the case as it appears before us on appeal. At the hearing on the parties' respective motions for summary judgment, Cook Ford maintained that the pertinent provisions of the franchise agreement were unambiguous, and that these provisions compelled a ruling as a matter of law that the agreement could not be terminated based upon a charge of misconduct by the dealer, the corporate entity, but could only be terminated if the charged misconduct was alleged to be that of the principal, R. Barry Cook. Ford, on the other hand, maintained just as steadfastly that the franchise agreement unambiguously provides for, or at the very least did not prohibit, termination based upon misconduct by the dealer as stated in its notice of termination.
The essence of Cook Ford's argument, both here and below, is that the notice of intended termination by Ford was "unfair on its face," and it is clear that Cook Ford rested its entire case on this assertion.[5] It appears from the record, Ford points out, that Cook Ford affirmatively argued to the trial court that the case should be decided on this narrow issue, as a matter of law. After hearing argument by counsel, the trial judge indicated that he would agree with an interpretation of the franchise agreement consistent with that found by the hearing officer in the earlier administrative proceeding and that his ruling *518 would be adverse to Cook Ford on that issue. The court commented, at the same time, that while the notice of termination was not "ipso facto incorrect or unlawful," there would appear to be an issue for trial on the facts, since not every act for which a dealer might be responsible under the doctrine of respondeat superior would necessarily be grounds for termination, but that such a conclusion would depend upon the facts. Upon receiving this oral pronouncement by the court, counsel for Cook Ford requested the court to enter summary judgment for Ford, so that the issue could be resolved by appeal. Counsel advised the court that Cook Ford had no intention of trying the case on the facts, stating, at one point: "I'm not going to waste my client's time on bringing a parade of witnesses up here to prove whether or not he [R. Barry Cook] had any knowledge of what was allegedly going on." The trial judge acceded to counsel's request, commenting: "I wasn't necessarily going to do that but if that's what you want me to do I don't have any problem in doing that because obviously if I'm correct then that ends the case as far as you all."
From the foregoing, it is apparent that the trial judge recognized that resolution of the case involved two issues: (1) whether the notice of termination was prohibited or unfair "on its face," as urged by Cook Ford, and (2) whether, upon consideration of the evidence which might be presented by the parties at a trial in support or in defense of the charged misconduct, the attempted termination was "unfair." It is equally clear that counsel for Cook Ford formally advised the court that relief was sought only on the first issue, and that Cook Ford would decline to proceed on the second issue, but would rely upon reaching a favorable result on the first issue on appeal.
Accordingly, as the case was presented below, the trial court was requested by Cook Ford to rule on an "either-or" basis: either grant summary judgment for Cook Ford on the narrow issue of facial unfairness of the notice of termination, or grant summary judgment for Ford by adopting the converse view  that the notice was not facially deficient. In our view, in order to prevail, Cook Ford was required to convince the trial court that the termination on grounds stated by Ford in its termination letter was not permitted by the franchise agreement. As stated by this court in International Harvester Co. v. Calvin, supra, the initial burden is upon the dealer to show the unfairness of the licensee's decision to terminate the franchise agreement. See also § 320.697, Fla. Stat. Cook Ford attempted to do this based upon the language of the franchise agreement and the contents of the termination notice itself, without any proof or offer to prove a set of facts upon which a finder of fact could determine that the threatened termination was unfair. We conclude, based upon our consideration of the record and the arguments on appeal, that the presumptive validity of the trial court's ruling has not been overcome on appeal.
Although the parties disagree on the standard of review applicable to this case, we are of the view that we are guided by the rule of review concerning a trial court's construction of agreements generally, so that we have a duty to affirm the trial court's construction of the agreement, unless such construction is clearly erroneous. See, Helie v. Wickersham, 103 Fla. 254, 137 So. 226, 228 (1931); Discount Drugs, Inc. v. Tulip Realty Co. of Florida, 396 So.2d 764 (Fla. 4th DCA 1981). Cook Ford urges that the court's interpretation of a written contract is simply to be reviewed as a matter of law, and that the standard of review is whether or not the decision is correct. "Construction of a contract is ordinarily a matter of law for the court, regardless of however ambiguous, uncertain or difficult its terms may be... ." 11 Fla.Jur.2d Contracts § 102.
Under either standard of review, it must be observed that the trial court was not required to rule upon an interpretation of the franchise agreement in a vacuum. Instead, the trial court had before it the agreement itself, the language of the notice of termination, the statutory framework within which the rights and obligations of licensees and dealers are spelled *519 out, and the facts presented by the pleadings and admissions of the parties. Thus, the trial court had before it the fact, as alleged in Cook Ford's complaint, that R. Barry Cook was the principal owner and operating manager of Barry Cook Ford, Inc., the dealer. The court also had the allegation by Ford, notwithstanding the less inclusive language of the termination letter, that R. Barry Cook, as well as other employees of the dealer, did engage in conduct which contributed to Ford's conclusion that the dealer committed the acts described in the notice of termination. Turning to the agreement itself, the termination provision in controversy appears under section 17(b) which has to do with termination due to events controlled by the dealer, specifically referring to "events which are substantially within the control of the dealer... ." In view of the purposes and intent of the agreement, as expressed by the language used, the trial court was correct in finding no departure from the agreement or inconsistency in Ford's notice of termination based upon acts of the dealer. It is axiomatic that a corporation acts only through its officers, agents and employees. McDaniel v. Sheffield, 431 So.2d 230 (Fla. 1st DCA 1983). In this case, events "substantially within the control of the dealer" of necessity would constitute events within the control of R. Barry Cook, the principal owner and manager in charge of operations of the dealership. Cook Ford failed to allege and declined to offer proof of any fact to show prejudice or unfairness in Ford's notice of termination.
We find that the trial court fairly evaluated the agreement in the context of the controversy between the parties, and reached a conclusion consistent with the existing statutes and in accordance with the reasonably ascertainable intentions of the parties, and therefore the judgment should be, and hereby is,
AFFIRMED.
ERVIN and KAHN, JJ., concur.
NOTES
[1] For simplicity, we will use the singular "agreement," although there were actually two franchise agreements, one entitled "Ford Sales and Service Agreement," and the other, "Foreign Vehicle Sales Agreement."
[2] This section provides for the revocation or suspension of the license of a manufacturer or distributor if the licensee has "unfairly or without due regard to the equities of a motor vehicle dealer, or without just provocation, threatened to cancel or not to renew the franchise agreement" of a motor vehicle dealer.
[3] Section 320.641(3) uses the past tense. However, given the 90-day notice provision and the stay, it is clear that a dealer may challenge an intended termination prior to its effective date.
[4] Since no such provision appears in the California statutes, we find inapposite Yamaha Motor Corporation, U.S.A. v. Superior Court, 195 Cal. App.3d 652, 240 Cal. Rptr. 806 (6th Dist. 1987), cited to us by Ford.
[5] Cook Ford concedes that certain 1988 amendments to section 320.641(3) are not applicable in this case, since these amendments became effective subsequent to the threatened franchise termination notice. Cook Ford maintains that under applicable case law, a threatened termination grounded upon a reason not authorized or permitted by the agreement is "unfair," citing International Harvester Co. v. Calvin, 353 So.2d 144 (Fla. 1st DCA 1977); Dick Winning Chrysler-Plymouth v. Chrysler Motors Corp., 750 F.2d 895 (11th Cir.1985); Mike Smith Pontiac GMC, Inc. v. Mercedes-Benz of North America, Inc., DOAH Case No. 86-0271, FAW Vol. VI, p. 957.