[No. C022987. Third Dist. Jan. 31, 1997.]

HARDIN OLDSMOBILE, Plaintiff and Appellant, v.
NEW MOTOR VEHICLE BOARD, Defendant and Respondent;
AMERICAN HONDA MOTOR CO., INC., et al., Real Parties in Interest
and Respondents.

## COUNSEL

Mitchell & Skola, Arthur H. Skola, Suzanne R. Varco, Mark E. Field and Lawrence Silver for Plaintiff and Appellant.

Daniel E. Lungren, Attorney General, Martin H. Milas, Assistant Attorney General, and Marybelle D. Archibald for Defendant and Respondent.

O'Neill, Lysaght & Sun, Robert L. Meylan, Brian A. Sun, Gibson, Dunn & Crutcher, Elizabeth A. Grimes, Horvitz & Levy Ellis J. Horvitz, John A. Taylor, Jr., and David M. Axelrad for Real Parties in Interest and Respondents.

## OPINION

**NICHOLSON, J.**—The jurisdiction of the New Motor Vehicle Board (Board) has limits. The claims asserted by the plaintiff, Hardin Oldsmobile (Hardin), are not within those limits. Accordingly, we reverse the trial court's contrary finding and remand for the court to issue a writ prohibiting the Board from exercising jurisdiction over Hardin's claims.

### FACTS AND PROCEDURAL HISTORY

This litigation arises from Hardin's allegations of misdealing by Honda. Hardin claims Honda's executives received bribes and kickbacks in exchange for favors concerning the allocation of new cars and the location and ownership of new dealerships. Hardin asserts it did not receive a rightful

allocation of the most salable cars and was not properly considered for new dealerships because it did not participate in the misconduct.

Hardin filed a civil action against Honda and other defendants in the federal district court for the central district of California, alleging causes of action for various federal statutory violations, including racketeering allegations, several California statutory violations, and five common law contract and tort claims and seeking compensatory, treble, and punitive damages.

The district court issued an order to show cause concerning whether it should dismiss Hardin's state claims for failure to submit those claims to the Board. Later, the court, instead of dismissing the claims, stayed the proceedings to allow Hardin to obtain action by the Board. Accordingly, Hardin filed a petition with the Board, alleging the same facts and requesting the full panoply of relief sought in the federal action. Hardin, however, also requested the Board to determine it did not have jurisdiction over the claims asserted. Nonetheless, the Board accepted jurisdiction over Hardin's state statutory and common law claims, effectively returning the federal claims to the district court. The state claims include violation of four provisions of the Business and Professions Code, breach of contract, breach of the covenant of good faith and fair dealing, conspiracy to commit fraud, negligent misrepresentation, intentional misrepresentation, negligence, intentional interference with prospective economic advantage, and negligent interference with prospective economic advantage.

Hardin petitioned the superior court for a writ of review, prohibition, and mandate to prevent the Board from exercising jurisdiction over any of its claims against Honda. The superior court denied the petition, and Hardin appeals.

In August 1995, the federal Judicial Panel on Multidistrict Litigation transferred all of the federal litigation arising from allegations against Honda, pending in the federal district courts of at least 10 different states, to the federal district court in Maryland for coordination of the proceedings. The panel ruled: "[T]he actions in this litigation involve common questions of fact concerning the existence, scope and effect of an alleged illegal scheme by former Honda executives in allocating vehicles among existing Honda dealerships and/or awarding new Honda dealerships in exchange for kickbacks and bribes. Centralization . . . in the District of Maryland will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation by avoiding duplication of discovery, preventing inconsistent pretrial rulings and conserving the resources of the parties, their counsel and the judiciary."

DISCUSSION

■ Relying almost exclusively on Court of Appeal cases from other districts and distinguishing a case from this district, the trial court denied Hardin's petition to prohibit the Board from considering the matter. We conclude the Board lacks legislative authority to preside over litigation in this matter.

There can be no dispute the consideration and resolution of the claims made by Hardin would require the Board to carry out judicial functions. The statutory and common law claims would necessitate discovery and some sort of dispute resolution. A full resolution, in the event Hardin prevails, would also require an award of damages, which the Board and Honda assert is within the Board's jurisdiction.

We first summarize the constitutional limitations on the exercise of judicial functions by administrative agencies.

■ In California, "[t]he judicial power of the State is vested in the [courts]." (Cal. Const., art. VI, § 1.) The Supreme Court, however, explained this judicial powers clause does not preclude all judicial functions by administrative agencies: "An administrative agency may constitutionally hold hearings, determine facts, apply the law to those facts, and order relief—including certain types of monetary relief—so long as (i) such activities are authorized by statute or legislation and are reasonably necessary to effectuate the administrative agency's primary, legitimate regulatory purposes, and (ii) the 'essential' judicial power (i.e., the power to make enforceable, binding judgments) remains ultimately in the courts, through review of agency determinations." (*McHugh* v. *Santa Monica Rent Control Bd.* (1989) 49 Cal.3d 348, 372 [261 Cal.Rptr. 318, 777 P.2d 91], italics omitted.) While, as stated, any administrative execution of judicial functions must be pursuant to legislative authorization, legislative authorization is inadequate constitutionally if it does not meet the reasonably necessary/ legitimate regulatory purpose test or if it seizes the essential judicial power from the courts. (See *Bradshaw* v. *Park* (1994) 29 Cal.App.4th 1267, 1275 [34 Cal.Rptr.2d 872].)

■ Vehicle Code section 3050, subdivision (c), relied on by both the Board and Honda as authority for the Board to exercise jurisdiction over this case, provides the Board shall "[c]onsider any matter concerning the activities or practices of any person applying for or holding a license as a new motor vehicle . . . manufacturer . . . submitted by any person. . . . After such consideration, the board may do any one or any combination of the

following: [¶] (1) Direct the department to conduct investigation of matters that the board deems reasonable, and make a written report on the results of the investigation to the board within the time specified by the board. [¶] (2) Undertake to mediate, arbitrate, or otherwise resolve any honest difference of opinion or viewpoint existing between any member of the public and any new motor vehicle . . . manufacturer . . . . [¶] (3) Order the department to exercise any and all authority or power that the department may have with respect to the issuance, renewal, refusal to renew, suspension, or revocation of the license of any new motor vehicle . . . manufacturer . . . ."

In particular, the Board and Honda point to the statutory authorization to consider "any matter" concerning a new motor vehicle manufacturer and to "mediate, arbitrate, or otherwise resolve any honest difference of opinion or viewpoint existing between any member of the public and any new motor vehicle . . . manufacturer . . ." as the source of the Board's power to exercise jurisdiction here.

Broadly defined, the phrase, "[c]onsider any matter concerning the activities or practices of any person applying for or holding a license as a new motor vehicle . . . manufacturer . . . submitted by any person" (Veh. Code, § 3050, subd. (c)), would include consideration of criminal actions and labor disputes. No one, including, most importantly, the Legislature that wrote it, would argue those matters fall under the jurisdiction of the Board; hence, the meaning of the phrase is limited. The best indication of the scope of the limitation is found in the remainder of the subdivision, in which the Board is given authority to investigate the activities, resolve any honest differences of opinion or viewpoint with members of the public, and order the Department of Motor Vehicles to exercise its licensing authority over a malefactor.

The Board has had this basic authority to consider "any matter," granted in Vehicle Code section 3050, since its formation in 1967. In 1973, the Legislature added section 3060 and others, expanding the Board's jurisdiction to include authority to consider protests filed by franchisees when, for example, the franchisor attempts to modify the franchise agreement or establish a new dealership. (Stats. 1973, ch. 996, §§ 14, 16, pp. 1966, 1967-1968.) If the Board already had plenary authority in all matters pursuant to the enabling legislation in 1967, including the authority to consider any matter and resolve disputes between franchisors and franchisees, it would not have been necessary for the Legislature to give the Board jurisdiction, in 1973, over franchise disputes.

As we stated in 1992, "[t]he Board is a quasi-judicial administrative agency of limited jurisdiction. [Citation.] It does not have plenary authority

to resolve any and all disputes which may arise between a franchisor and a franchisee." (*Ri-Joyce, Inc.* v. *New Motor Vehicle Bd.* (1992) 2 Cal.App.4th 445, 455 [3 Cal.Rptr.2d 546].)

From the remainder of Vehicle Code section 3050, subdivision (c), it is evident the Legislature intended to limit the jurisdiction of the Board to consideration and resolution of only a circumscribed domain of matters. What that domain includes, however, is not evident from a cursory look at the face of the statute. The subdivision gives the Board jurisdiction to "[u]ndertake to mediate, arbitrate, or otherwise resolve any honest difference of opinion or viewpoint existing between any member of the public and any new motor vehicle . . . manufacturer . . . ." (§ 3050, subd. (c)(2).) This curious wording is vague. It refers to "any honest difference of opinion or viewpoint," but does not define the term. If the Legislature meant to allow the Board to resolve any legal dispute, it could have said so. Instead, it benignly referred to "honest difference[s] of opinion or viewpoint." Both the benign terminology and the absence of express authority to award the full panoply of damages, which will be discussed, establish the Legislature did not intend to replace the courts with the Board in presiding over traditional litigation involving a broad range of statutory and common law causes of action, as the Board seeks to do here.

The Legislature's use of the word "honest" in describing the differences of opinion or viewpoint subject to Board jurisdiction connotes disputes characterized by an absence of the serious misconduct, even possible criminality, and responsive denial involved here. If not so, then the addition of the word "honest" in the statute means nothing. We are not authorized to disregard the words used in a legislative enactment. (*Harris* v. *Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1159 [278 Cal.Rptr. 614, 805 P.2d 873].)

In addition, the legal authorization to resolve "any honest difference of opinion or viewpoint" relates to differences of opinion or viewpoint the licensee has with a "member of the public." (Veh. Code, § 3050, subd. (c)(2).) Again, this circumscribing language reveals a legislative intent to limit the ambit of honest differences of opinion or viewpoint over which the Board may preside. When referring to licensees, section 3050 specifically so states and exhaustively lists those licensees ("applicant for, or holder of, a license as a new motor vehicle dealer, manufacturer, manufacturer branch, distributor, distributor branch, or representative"). The legislative authorization in section 3050 to resolve differences of opinion or viewpoint, however, does not say it extends to traditional litigation between licensees; it limits the authorization to differences of opinion or viewpoint between a licensee and a member of the public. On the other hand, Vehicle Code section 3060

explicitly gives the Board jurisdiction over certain protests between licensees. If the Legislature meant to give the Board the power it now seeks over disputes between licensees, it would have done so explicitly, as it did in section 3060.

While we readily find this so, not all divisions and districts of the Court of Appeal have agreed. Division One of the Second District of the Court of Appeal held the jurisdiction of the Board is broad, indeed, so broad the jurisdiction extends to any common law or statutory claim the facts of which could also form the basis of a protest to the Board. (*Yamaha Motor Corp.* v. *Superior Court* (1986) 185 Cal.App.3d 1232 [230 Cal.Rptr. 382] (*Yamaha I*).) In *Yamaha I*, the dealership filed a complaint in the trial court seeking damages for breach of contract, breach of the implied covenant of good faith and fair dealing, and intentional interference with prospective business advantage. It based these allegations on Yamaha's refusal to sell certain products to the dealership, bad faith abandonment of advertising of the dealership's products, and discriminatory allocation of products in retaliation for the dealership's objections to Yamaha's practices. (*Id.* at pp. 1236-1237, 1242.)

The appellate court held the Board had jurisdiction over the dispute because Vehicle Code section 3050, subdivision (d) permits the Board to hear and consider "a protest presented by a franchisee pursuant to Section 3060, 3062, 3064, or 3065," and that the dealership had to exhaust this remedy before resorting to the courts. (185 Cal.App.3d at p. 1237.) Those sections mandate certain procedures for termination of a franchise (Veh. Code, § 3060), establishment or relocation of a dealership (Veh. Code, § 3062), delivery and preparation of obligations (Veh. Code, § 3064), and warranty reimbursement (Veh. Code, § 3065).

Vehicle Code sections 3060 and 3062, in particular, require the franchisor to give notice of modification of a franchise agreement or establishment of a new dealership and allow franchisees to protest the action and obtain from the Board a determination of whether the action is taken in good faith. The only remedy available under those sections is to prevent the franchisor from taking a limited group of specified actions without good cause.

Even though the dealership did not assert Yamaha violated Vehicle Code section 3060 or 3062 and did not seek the remedy provided by those sections, the court concluded: "It is clear from these statutes that the board is authorized to consider and resolve disputes between a franchisor and franchisee regarding the franchisor's modification of an existing franchise or its establishment of an additional franchise within the market area of an existing franchise." (*Yamaha I, supra,* 185 Cal.App.3d at p. 1238.) Rejecting the dealership's objection the complaint did not implicate the Vehicle Code, the

court held the breach of contract alleged by the dealership constituted (1) an attempted modification of the agreement and, therefore, fell within section 3060, which restricts the right of the manufacturer to modify the agreement and (2) a violation of section 3062 because part of the factual basis for the breach of contract claim was that Yamaha established a new dealership in close proximity to the plaintiff dealership. (185 Cal.App.3d at p. 1239.)

We disagree with the holding in *Yamaha I, supra,* 185 Cal.App.3d 1232. (See also *Miller* v. *Superior Court* (1996) 50 Cal.App.4th 1665, 1669-1676 [58 Cal.Rptr.2d 584] [rejecting *Yamaha I* and its progeny].) The court failed to recognize that the jurisdiction of the Board and the application of the exhaustion of remedies or primary jurisdiction doctrine must be considered separately. That a litigant must exhaust *administrative remedies* before seeking relief in the courts does not bestow upon the administrative agency the jurisdiction to consider and resolve *all common law and statutory remedies.* Prior resort to the administrative agency does not take away from the litigant the right to allege and prove claims not under the jurisdiction of the agency and does not expand the jurisdiction of the agency to hear and consider those claims.

When the *Yamaha I* court said that Vehicle Code sections 3060 and 3062 give the Board authority to resolve disputes between franchisors and franchisees (185 Cal.App.3d at p. 1238), it could only mean the Board could consider a protest alleging a violation of those sections. The Board's jurisdiction over such matters is specifically limited in Vehicle Code section 3050, subdivision (d), which states the Board shall "[h]ear and consider, *within the limitations and in accordance with the procedure provided,* a protest by a franchisee pursuant to Section 3060 [or] 3062 . . . ." (Italics added.) Conspicuously missing is any statement or implication that the Board can hear and consider any common law or statutory claim the foundational facts of which could have been, but were not, alleged as a violation of section 3060 or 3062. The *Yamaha I* court's statement concerning the Board's jurisdiction over disputes between franchisors and franchisees, while true if applied to a dispute in which a protest alleging violation of section 3060 or 3062 is filed with the Board, is not true if the dispute between the franchisor and the franchisee is based only on other statutory and common law grounds and does not seek the remedy available under those sections. For example, as we have held, the Board does not have jurisdiction under section 3050, subdivision (d) to hear and consider a common law fraud or breach of contract cause of action by the franchisee against the franchisor and award damages if common law liability is found. (See *Ri-Joyce, Inc.* v. *New Motor Vehicle Bd., supra,* 2 Cal.App.4th at p. 455 (*Ri-Joyce*).)

It cannot be said that the Board has jurisdiction over statutory and common law claims not specified in the enabling legislation merely because

some of the facts forming the foundation for such a claim *could have been asserted* as the foundation of a statutory protest claim within the Board's jurisdiction. That is, in the end, an illogical argument which goes as follows: (1) the administrative agency has jurisdiction over some claims arising from a certain set of facts and (2) the exhaustion of remedies or primary jurisdiction doctrine requires prior resort to the administrative agency; therefore, (3) the administrative agency has jurisdiction over all claims arising from those facts. The conclusion does not follow from the premises. The *Yamaha I* court's leap from specific jurisdiction over protests filed alleging violations of Vehicle Code sections 3060 and 3062 to general jurisdiction over "disputes between a franchisor and franchisee regarding the franchisor's modification of an existing franchise or its establishment of an additional franchise within the market area of an existing franchise" (185 Cal.App.3d at p. 1238) is unsupported.

In another case involving Yamaha in a dispute with one of its franchisees, the Sixth District of the Court of Appeal focused on the doctrine of exhaustion of administrative remedies and found that, because the common law causes of action overlapped with the allegations made in protests filed by the franchisee with the Board, the franchisee had not exhausted its administrative remedies and could not, therefore, maintain an action against Yamaha in the courts. (*Yamaha Motor Corp.* v. *Superior Court* (1987) 195 Cal.App.3d 652, 654-660 [240 Cal.Rptr. 806] (*Yamaha II*).) Instead of considering the scope of the Board's jurisdiction by applying the judicial powers clause and other relevant authority, the *Yamaha II* court simply declared: "We give great weight to the agency's position here that it did have jurisdiction and that the [franchisee] should have brought the dispute there first." (*Id.* at p. 660.)

Doing no more than cite and quote parts of Vehicle Code section 3050, Division Three of the Second District of the Court of Appeal relied on the Yamaha cases to find the Board had jurisdiction over matters similar to those asserted by Hardin. (*Ray Fladeboe Lincoln-Mercury, Inc.* v. *New Motor Vehicle Bd.* (1992) 10 Cal.App.4th 51 [12 Cal.Rptr.2d 598].) The *Fladeboe* court disagreed with *Ri-Joyce, supra,* 2 Cal App.4th 445 because *Ri-Joyce* did not mention the Yamaha cases. In support of following the Yamaha cases, the court lamented the *Ri-Joyce* holding would allow dealerships to circumvent the jurisdiction of the Board through "artful pleading," that is, by alleging claims outside the jurisdiction of the Board. (10 Cal.App.4th at pp. 55-56.) Without citation to authority, the *Fladeboe* court deemed it undesirable and against public policy to allow litigation in the courts when a protest could also be filed in the administrative agency. (*Id.* at p. 56.) In effect, *Fladeboe* abdicated judicial power to the Board based on the court's view of public policy, never mentioning the judicial powers clause of the California Constitution.

Furthermore, there is no statutory authority for the Board to award damages. This omission from the Vehicle Code, which we can only presume is intentional, is overlooked by the divisions and districts of the Court of Appeal that grant great leeway to the Board. Yet it is perhaps most indicative of legislative intent not to erode the courts' judicial power by giving the Board authority over statutory and common law causes of action not specifically included in the Vehicle Code. The Yamaha cases made no mention of the judicial powers clause of the California Constitution and made no attempt to determine what remedy the plaintiffs could obtain by resorting to the Board.

In the view of the Board and Honda, the Board has plenary power to award compensatory damages. To do so, they argue, the Board follows the procedure upheld in a Court of Appeal opinion, *McKee* v. *Bell-Carter Olive Co.* (1986) 186 Cal.App.3d 1230 [231 Cal.Rptr. 304] (*McKee*), and discussed approvingly by the Supreme Court in *McHugh* v. *Santa Monica Rent Control Bd.*, *supra*, 49 Cal.3d at page 363. As is evident from a careful examination, however, *McKee* neither purports nor can be construed to be an apology for the wholesale award of compensatory damages by a licensing board. Instead, the holding, as required by Supreme Court jurisprudence, is narrowly confined to awards of restitution incidental to licensee discipline.

In *McKee*, a grower sued a processor for failing to pay for olives. Alleging contract and tort claims, the grower sought compensatory and punitive damages. On the processor's motion for summary judgment, the trial court granted the motion and dismissed because the grower had failed to exhaust his administrative remedies with the Bureau of Marketing Enforcement. (186 Cal.App.3d at pp. 1232-1233.) The Court of Appeal reversed. Even though the plaintiff had administrative remedies available to him, the court held he was not obligated to exhaust them because the specific statute also allowed primary resort to the courts. (*Id.* at p. 1246.) Concerning the available administrative remedies, the court found the relevant regulatory scheme, set forth in the Food and Agricultural Code, explicitly gave the bureau authority to consider disputes between growers and processors concerning the payment and to suspend the processor's license until the payment was made. The court held: "[The statutes made] clear that once the Director has determined a producer is entitled to payment from a licensed processor, the Director may indirectly compel compliance with such an order by conditioning suspension of the processor's license upon payment of the money due the producer." (*Id.* at p. 1238.)

The administrative remedy discussed in *McKee* is exclusively corrective and equitable. It provides for specific performance of the contract between

the grower and processor. This is the type of administrative remedy discussed approvingly by the Supreme Court. (*McHugh* v. *Santa Monica Rent Control Bd.*, *supra*, 49 Cal.3d at p. 363.)

In *McHugh*, a landlord challenged a provision in the Santa Monica City Charter giving the rent control board the authority to adjudicate excess rents and impose treble damages. (49 Cal.3d at pp. 352-353.) Measuring the authority of the rent control board by the limitations of the judicial powers clause, the Supreme Court concluded the adjudication of excess rents did not violate that clause. The court declared: "[A]lthough we acknowledge the constitutional importance of ensuring judicial review of administrative determinations, our prior cases do not stand for the proposition that an administrative agency may exercise all manner of 'judicial-like' power on the simple condition that judicial review of the administrative decision remains available. On the other hand, our prior licensing cases have accepted without constitutional debate the authority of licensing agencies to impose a restitutive award as a probationary condition." (*Id.* at p. 364.)

Applying the judicial powers test quoted above, the *McHugh* court concluded the award of excess rents by the rent control board did not violate the judicial powers clause: "The Board's legitimate regulatory authority, and hence its incidental remedial authority, is circumscribed. It may not, and does not, hear and adjudicate all manner of disputes between landlords and tenants. Its authority is derived from the local police powers [citations], and extends only so far as necessary to set and regulate rents. Incidental to that legitimate primary purpose—and 'in order to produce an efficient and effective administrative enforcement of the public interest,' [citation], the Board may review the rents actually charged, and order necessary adjustments to assure compliance with its price control regulations." (49 Cal.3d at p. 375.) Nonetheless, the court noted: "Resolution of the question might be different in a situation in which an agency purports to adjudicate substantial 'damage' claims such that recovery of damages becomes the primary focus, as opposed to merely an incidental aspect of the regulatory scheme." (*Id.* at p. 381, fn. 53.)

On the other hand, the *McHugh* court found the imposition of treble damages violated the judicial powers clause: "[W]e believe that the power to award treble damages in the present context poses a risk of producing arbitrary, disproportionate results that magnify, beyond acceptable risks, the possibility of arbitrariness inherent in any scheme of administrative adjudication." (49 Cal.3d at p. 379.)

While Honda cites and quotes *McKee*, *supra*, 186 Cal.App.3d 1230 as support for its assertion that the Board can award compensatory damages to

Hardin, it makes no attempt to fit the damages Hardin seeks into the narrow range of restitutive damages allowed by *McKee* and *McHugh*. The damages Hardin seeks—compensatory, treble, and punitive—are not restitutive in nature. As remedies for the various statutory, contract, and tort claims, Hardin seeks damages for Honda's misdealings with respect to vehicle allocation and new dealership awards. These are not equitable in nature and do not seek specific performance of a contract. Instead, they are judicial remedies having little, if anything, to do with licensee discipline. The dispute involved here is not whether a particular allocation of vehicles was made according to a contract and, if not, what corrective action must be directed; instead, it involves broader issues and allegations of misfeasance, indeed, corruption, infecting the entire relationship between Honda and Hardin and giving rise to a possible right on the part of Hardin to prove it was damaged by such misfeasance and corruption. Were the Board permitted to award damages in an action such as this, the primary focus of the litigation would be the recovery of damages and the regulatory purpose would be incidental, if existent at all. Neither the statute defining the duties of the Board nor the judicial powers clause of the Constitution allows such a broadening of the Board's role. (See *McHugh* v. *Santa Monica Rent Control Bd.*, *supra*, 49 Cal.3d at p. 381 & fn. 53.)

While the Vehicle Code gives the Board statutory authority to hear specific protests by franchisees and also gives general authority to resolve honest differences of opinion between licensees and members of the public, it does not replace the judiciary with the Board as the forum for litigating other statutory and common law causes of action. While some of the language giving the Board authority appears broad, such as "consider any matter," the context of the language, especially the absence of statutory authority to award general compensatory and punitive damages, makes it evident the authority of the Board over traditional litigation involving its licensees is not plenary and, indeed, has not been broadly authorized by the Legislature. (See *McHugh* v. *Santa Monica Rent Control Bd.*, *supra*, 49 Cal.3d at p. 381 & fn. 53.)

The Board has jurisdiction over matters "submitted" to it concerning the activities of licensees. (Veh. Code, 3050, subd. (c).) It also may exercise jurisdiction over any "protest presented" by one licensee against another under the limitations found in Vehicle Code section 3060. (§ 3050, subd. (d).) In conjunction with this jurisdiction over disputes, the Board may adopt rules and regulations "governing such matters as are specifically committed to its jurisdiction." (§ 3050, subd. (a).) The Board's jurisdiction is "specific" and "limited," not general. (*Ri-Joyce, Inc.* v. *New Motor Vehicle Bd.*, *supra*, 2 Cal.App.4th at p. 455.) It may not assert jurisdiction beyond the bounds of

its statutory authorization as discussed herein. The status of the litigants—a new motor vehicle and a vehicle manufacturer—does not confer jurisdiction on the Board over common law claims and statutory claims not specifically committed to it.

Here, Honda seeks to hide behind the Board in what is essentially federal litigation of interstate effect and importance. We are confident the Legislature never intended to erect such a barrier to a comprehensive and coordinated resolution of such widespread misconduct as alleged by Hardin and other plaintiffs. The claims over which the Board attempts to assert jurisdiction belong with their many siblings and cousins in the federal district court in Maryland.

In summary, because the Board does not have statutory authorization to preside over the claims asserted by Hardin, the assertion of jurisdiction by the Board violates the judicial powers clause of the California Constitution. (*McHugh* v. *Santa Monica Rent Control Bd.*, *supra*, 49 Cal.3d at p. 372.) Given this conclusion, we need not further consider whether Board jurisdiction over the claims asserted by Hardin is "reasonably necessary to effectuate the administrative agency's primary, legitimate regulatory purposes" or whether "the 'essential' judicial power (i.e., the power to make enforceable, binding judgments) remains ultimately in the courts, through review of agency determinations." (*Ibid.*) We also need not consider whether the Board's exercise of jurisdiction over Hardin's claims violates Hardin's right to a jury trial.

### DISPOSITION

The judgment is reversed. The trial court is directed to issue a writ requiring the Board to decline jurisdiction over Hardin's state statutory and common law claims. Hardin shall recover its costs on appeal. Honda's request for judicial notice of other petitions pending before the Board is denied.

Sparks, Acting P. J., and Davis, J., concurred.

A petition for a rehearing was denied February 28, 1997, and the opinion was modified to read as printed above. The petition of real parties in interest for review by the Supreme Court was denied May 21, 1997. Kennard, J., and Werdegar, J., were of the opinion that the petition should be granted.