[No. G016501. Fourth Dist., Div. Three. Sept. 30, 1997.]

MAURY PAGE KEMP et al., Plaintiffs and Appellants, v. NISSAN MOTOR CORPORATION IN U.S.A., Defendant and Respondent.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part II.

**COUNSEL**

James T. Duff for Plaintiffs and Appellants.

Latham & Watkins, Jon D. Anderson, Pinto, Gromet, Dubia & Worcester and Mark D. Erickson for Defendant and Respondent.

**OPINION**

**SILLS, P. J.—**

I

In July 1993, Maury Page Kemp, a former Palm Springs Nissan dealer, sued the Nissan Motor Corporation in U.S.A. for breach of contract because

Nissan would not approve the sale of his dealership to a third party. In June 1994, i.e., prior to the decisions of the Court of Appeal in *Miller* v. *Superior Court* (1996) 50 Cal.App.4th 1665 [58 Cal.Rptr.2d 584] and *Hardin Oldsmobile* v. *New Motor Vehicle Bd.* (1997) 52 Cal.App.4th 585 [60 Cal.Rptr.2d 583], the trial court granted summary judgment to Nissan because Kemp, by not taking his breach of contract claim to the New Motor Vehicle Board, had not exhausted his administrative remedies. Kemp appealed. Prior to oral argument we invited the parties to submit supplemental briefing on *Miller* and *Hardin Oldsmobile.* ■ In this opinion we now explain why Nissan's proffered reasons for distinguishing *Miller* and *Hardin Oldsmobile* lack persuasive merit, and why Kemp's breach of contract action is not subject to an exhaustion requirement.

## A

There are two ostensible differences between this case and the *Miller* and *Hardin Oldsmobile* cases. First, both *Miller* and *Hardin Oldsmobile* arose out of unfair *allocation* claims made against an auto manufacturer whose sales managers allegedly expected to be bribed before they would provide dealers with the most popular and salable models. (See *Miller* v. *Superior Court, supra,* 50 Cal.App.4th at p. 1668; *Hardin Oldsmobile* v. *New Motor Vehicle Bd., supra,* 52 Cal.App.4th at pp. 587-588.) By contrast, the present case arises out of an allegedly unreasonable failure to approve the proposed buyer of a dealership, a claim which does not normally imply the kind of dishonesty and corruption involved in the *Miller* and *Hardin Oldsmobile* cases.[1]

Second, *Hardin Oldsmobile* held that the board had no statutory authority *at all* to preside over the bribery and corruption claims at issue there. (See *Hardin Oldsmobile* v. *New Motor Vehicle Bd., supra,* 52 Cal.App.4th at p. 598.) (The *Miller* decision assumed the board had statutory authority, but did not directly address the issue.) By contrast, the claim involved here—the unreasonable withholding of approval of the sale of a new car dealership—appears at first blush to be within the province of the board. The unreasonable failure to approve a proposed buyer of a new car dealership is the

---

[1]We say "normally," because it is of course possible that an unreasonable failure to approve claim can arise out of bribery (as distinct from, say, an honest disagreement as to the suitability of a buyer), as is illustrated by a case filed after oral argument but not yet final as of the filing of this opinion, *Tovas* v. *American Honda Motor Co.* (1997) 57 Cal.App.4th 506 [67 Cal.Rptr.2d 145].

subject of an express prohibition in the licensing and business regulation provisions of the Vehicle Code. (See Veh. Code, § 11713.3, subd. (d).)[2]

Nissan argues that these distinctions should make a legal difference. They *do not.* Kemp's breach of contract claim is still not subject to an exhaustion requirement.

It is true, as demonstrated in *Hardin Oldsmobile*, that bribery and corruption claims are beyond the purview of the statutory authority of the board. (See 52 Cal.App.4th at p. 591.)[3] It does not follow, however, that the existence of authority on the part of the board to consider a claim necessarily subjects that claim to an exhaustion requirement. In *Miller*, this court assumed that the unfair allocation claims based on bribery were properly within the ambit of the board's statutory authority, and we *still* held that exhaustion was not required. (See *Miller* v. *Superior Court, supra*, 50 Cal.App.4th at pp. 1672-1676.) The presence of statutory authority allowing the board to consider a claim thus does not make *Miller* distinguishable.

Conversely, it makes no difference that the board may not have had a statutory basis to consider the bribery claims in *Miller* and *Hardin Oldsmobile.* As we showed in *Miller*, because the Legislature never intended the board to exclusively occupy the field of claims between dealers and manufacturers—even claims otherwise within the purview of the board's authority—exhaustion is not required. (See *Miller* v. *Superior Court, supra*, 50 Cal.App.4th at pp. 1672-1676.)

B

Independent of the application of *Miller* or *Hardin Oldsmobile* to the present case, Nissan presents a related series of policy arguments ad horrendum: If exhaustion is not required, new car dealers will be allowed to "side

---

[2]Vehicle Code section 11713.3, subdivision (d) provides in pertinent part: "No dealer . . . shall, however, have the right to sell . . . the franchise . . . without the consent of the manufacturer . . . except that the consent shall not be unreasonably withheld."

All statutory references in this opinion are to the Vehicle Code.

[3]As *Hardin Oldsmobile* pointed out, the Legislature's use of the word "honest"—as in "honest difference of opinion"—in the statute granting the board its authority (Veh. Code, § 3050, subd. (c)(2)) shows the Legislature did not intend the board to preside over disputes involving "serious misconduct, even possible criminality." (*Hardin Oldsmobile* v. *New Motor Vehicle Bd., supra*, 52 Cal.App.4th at p. 591.) A similar point is also made in the nonfinal *Tovas* case (see fn. 1, *ante*): "When a nonsignatory to a franchise agreement brings a common law tort claim based on allegations of commercial bribery, independent from any franchisor-franchisee relationship or agreement, the claim, as a matter of law, cannot be included within the disputes covered by section 3050." (*Tovas* v. *American Honda Motor Co., supra*, 57 Cal.App.4th at p. 520.)

step the rigors of expert scrutiny"; there will be the possibility of "inconsistent results"; dealer claims against manufactures will be rendered truly "Board optional."

The answer to all these points is simple: Take it to the Legislature. The Legislature did not establish the board to give manufacturers an extra line of defense from dealer claims, but to protect dealers from "undue control" by manufacturers. (*Miller* v. *Superior Court, supra*, 50 Cal.App.4th at p. 1676, citing Stats. 1973, ch. 996, § 1, p. 1964.) If the Legislature had wanted administrative proceedings before the board to constitute an extra gauntlet which dealers had to run before being allowed to litigate otherwise cognizable common law claims against manufacturers, it could have said so. It did not. (See 50 Cal.App.4th at p. 1676.) While it may (or may not) be desirable in the abstract for the board to first pass on dealer claims against manufacturers, that is simply not the law the Legislature wrote.

We need only add that it was hardly unreasonable for the Legislature to make dealer claims, in effect, "Board optional." In light of the substantial, often huge, investments which new car dealers make in their businesses, dealers *are* in need of protection against oppressive trade practices. (See *Ri-Joyce, Inc.* v. *New Motor Vehicle Bd.* (1992) 2 Cal.App.4th 445, 456, fn. 4 [3 Cal.Rptr.2d 546].) It would have been highly anomalous of the Legislature to have substantively restricted—or tacked substantially increased costs onto—remedies which dealers *already possessed* in the course of trying to protect dealers from "undue control" by manufacturers. (Cf. *Fremont Comp. Ins. Co.* v. *Superior Court* (1996) 44 Cal.App.4th 867, 875 [52 Cal.Rptr.2d 211] [remarking on the anomalousness of the Legislature trying to curtail insurance fraud by limiting existing right of insurers to report fraud].)

## C

Because summary judgment was granted on the breach of contract claim due to Kemp's failure to exhaust administrative remedies, the judgment must be reversed. Reversal, however, raises the question of whether, under the doctrine of primary jurisdiction, the trial judge has discretion to stay the action pending administrative action. (See *Miller* v. *Superior Court, supra*, 50 Cal.App.4th at p. 1677.)

In *Miller*, this court said that a lawsuit brought by a dealer against a manufacturer, even though not subject to exhaustion, still might be stayed pending administrative action under the doctrine of primary jurisdiction. (See *Miller* v. *Superior Court, supra*, 50 Cal.App.4th at p. 1677.) The

question of whether the board had the authority to hear the bribery-unfair allocation claim *in the first place* was not raised by the parties, and we did not have the benefit of the *Hardin Oldsmobile* decision on that question. In the light of *Hardin Oldsmobile* v. *New Motor Bd., supra,* 52 Cal.App.4th 585,[4] it is now clear that there was no possibility of proper application of the primary jurisdiction doctrine in *Miller* because the doctrine cannot apply in cases where the administrative agency has no jurisdiction.

To the degree that *Miller* might be (erroneously) read for the proposition that common law claims of new car dealers against manufacturers can be first referred to the board under the doctrine of primary jurisdiction, the present case affords us a chance to make amends. Just because a claim may come within the board's jurisdiction does not mean that it is one appropriate for prior resort to administrative process under the primary jurisdiction doctrine. Here, for example, while it is possible that the very act of referring Kemp's claim to the board would create the jurisdiction necessary for the board to hear it,[5] the claim is still not an appropriate one for application of the primary jurisdiction doctrine.

The doctrine of primary jurisdiction is based on the ideas of judicial economy and the need for uniformity in the application of administrative

---

[4]And the decision in *Tovas* v. *American Honda Motor Co., supra,* 57 Cal.App.4th 506.

[5]The authorizing statute for the board, section 3050, grants the board power to engage in four kinds of activities, corresponding to subdivisions (a) through (d) of the statute. The first two, rulemaking (subd. (a)) and consideration of certain administrative appeals (subd. (b)), are plainly not applicable to the present case or the usual common law claims brought by dealers against manufacturers. Significantly, the same may be said—for the moment at least—for the third kind of activity: consideration of "any matter" concerning the "activities" of any dealer or manufacturer "submitted by any person." (Subd. (c).) *Thus far* no one has "submitted" the dispute to the board.

The last basis of board authority, subdivision (d), is not applicable either. That subdivision gives the board power to hear and consider protests "presented by a franchisee pursuant to Section 3060, 3062, 3064, or 3065." While the unreasonable refusal to approve the proposed buyer of a dealership is covered by a statute, such claims are *not* "pursuant to" section 3060, 3062, 3064, or 3065. One looks in vain in those statutes for a requirement that manufacturers be reasonable in consenting to the sale of new car dealerships.

However, even though the board is not *now* empowered to consider Kemp's unreasonable disapproval claim does not necessarily mean the matter could not be properly "submitted" to it. Subdivision (c) of section 3050 provides in pertinent part: "The board *shall* do all of the following: . . . . [¶] (c) Consider any matter concerning the *activities* or practices of *any* person . . . holding a license as a new motor vehicle *dealer, manufacturer . . .* or representative *pursuant to Chapter 4 (commencing with Section 11700)* of Division 5 submitted by *any person.*" (Italics added.) As it turns out, the statute which precludes unreasonable disapproval by manufacturers, section 11713.3, subdivision (d), falls squarely within "Chapter 4 (commencing with Section 11700) of Division 5" of the Vehicle Code. Because an unreasonable refusal to approve a claim is clearly within the "any matter . . . submitted by any person" language of section 3050, subdivision (c), it appears that a trial court's very act of referring a case to the board could itself provide the basis for the board's jurisdiction.

regulations. (See *Farmers Ins. Exchange* v. *Superior Court* (1992) 2 Cal.4th 377, 396, 400 [6 Cal.Rptr.2d 487, 826 P.2d 730].) The agency review should be able to resolve complex factual questions and afford a record for subsequent judicial review. (See *id.* at p. 397.) For example, questions of insurance ratemaking are tailor-made for the doctrine (*id.* at pp. 399-400), as are questions of railroad shipping rates under the Interstate Commerce Commission (see *id.* at pp. 386-387).

In the present case, unlike questions of administrative price control in which there is a need for uniformity in the interpretation of regulations, the claim is one traditionally sounding in common law contract: an unreasonable refusal to allow an assignment. Nissan has not pointed to the existence of any set of regulations needing uniform interpretation, how board involvement might resolve any factual issues, or how it might provide a record for subsequent judicial review. All that would be accomplished would be delay of a plaintiff's right to a jury trial. (See *Miller* v. *Superior Court, supra*, 50 Cal.App.4th at p. 1678 ["If one has a right to a trial by jury, one has a right to a trial by jury . . . ."].) Under such circumstances, it would be error for us to even suggest that application of the doctrine of primary jurisdiction and prior resort to administrative process is a possibility.

II*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

III

The judgment is reversed. Appellant Kemp is to recover his costs on appeal.

Wallin, J., and Rylaarsdam, J., concurred.

A petition for a rehearing was denied October 29, 1997, and respondent's petition for review by the Supreme Court was denied January 14, 1998.

---

*See footnote, *ante*, page 1527.