[No. C039922. Third Dist. July 31, 2003.]

MAZDA MOTOR OF AMERICA, INC., Plaintiff and Respondent, v. CALIFORNIA NEW MOTOR VEHICLE BOARD, Defendant and Appellant;
DAVID J. PHILLIPS BUICK-PONTIAC, INC., Real Party in Interest and Appellant.

1452

COUNSEL

Bill Lockyer, Attorney General, Jacob Appelsmith, Vincent J. Scally, Jr., and Marybelle D. Archibald, Deputy Attorneys General, for Defendant and Appellant.

Manning, Leaver, Bruder & Berberich, Robert D. Daniels and Christian J. Scali for Real Party in Interest and Appellant.

Peter K. Welch for California Motor Car Dealers Association as Amicus Curiae on behalf of Real Party in Interest and Appellant.

Alvarado, Smith & Sanchez, Maurice Sanchez and Michael P. Norton for Plaintiff and Respondent.

OPINION

HULL, J.—

This case centers on a jurisdictional issue, namely, whether a dispute between plaintiff Mazda Motor of America, Inc. (Mazda), and one of its dealerships, real party in interest David J. Phillips Buick-Pontiac, Inc. (Phillips), should be resolved by the California New Motor Vehicle Board (the Board) or the courts. We agree with the trial court that this dispute is not within the limited jurisdictional scope of the Board and therefore affirm the judgment.

### FACTS AND PROCEDURAL HISTORY

Mazda is a licensed motor vehicle distributor in California, and Phillips is a licensed Mazda dealer.

Phillips entered into an agreement to sell its Mazda dealership to a third party. The franchise agreement required "Mazda's prior written consent, which shall not be unreasonably withheld," to transfer ownership of the Phillips dealership. This contract provision parallels the statutory provisions of Vehicle Code section 11713.3, subdivisions (d)(1) and (e). (Further undesignated statutory references are to the Vehicle Code.)

Under both the franchise agreement and statutory provisions (§ 11713.3, subd. (d)(2)(A)), Phillips was required to give Mazda written notice of a

transfer of the dealership. The statutory scheme makes it unlawful for a distributor to fail to notify the franchisee of approval or disapproval of the transfer within 60 days after receiving notice and application for approval of the transfer. § 11713.3, subd. (d)(2)(B). ) If the franchisee does not receive notice of disapproval within that time, the transfer is deemed approved. (*Ibid.*)

Phillips submitted an application to Mazda for approval of the transfer. Mazda disapproved the application, explaining why the transferee was not an acceptable dealer candidate to Mazda.

Controversy ensued. Phillips contended that Mazda's disapproval notice was beyond the 60-day period, and therefore the transfer had to be deemed accepted. Mazda countered that the application was incomplete until additional materials it requested had been received, which occurred less than 60 days before it sent the disapproval notice.

Phillips filed a petition with the Board pursuant to section 3050, subdivision (c). This statute is central to the issues in this appeal, and we therefore set out its provisions in full. The statute states that the Board shall "[c]onsider any matter concerning the activities or practices of any person applying for or holding a license as a new motor vehicle dealer, manufacturer, manufacturer branch, distributor, distributor branch, or representative pursuant to Chapter 4 (commencing with Section 11700) of Division 5 [of the Vehicle Code] submitted by any person. A member of the board who is a new motor vehicle dealer may not participate in, hear, comment, advise other members on, or decide any matter considered by the board pursuant to this subdivision that involves a dispute between a franchisee and franchisor. After that consideration, the board may do any one, or any combination of, the following:

"(1) Direct the [Department of Motor Vehicles (DMV)] to conduct investigation of matters that the board deems reasonable, and make a written report on the results of the investigation to the board within the time specified by the board.

"(2) Undertake to mediate, arbitrate, or otherwise resolve any honest difference of opinion or viewpoint existing between any member of the public and any new motor vehicle dealer, manufacturer, manufacturer branch, distributor branch, or representative.

"(3) Order the [DMV] to exercise any and all authority or power that the department may have with respect to the issuance, renewal, refusal to renew, suspension, or revocation of the license of any new motor vehicle dealer, manufacturer, manufacturer branch, distributor, distributor branch, or representative as that license is required under Chapter 4 (commencing with Section 11700) of Division 5."

In its petition to the Board, Phillips alleged that "[c]ertain controversies and differences of opinion have arisen between petitioner and respondent, primarily relating to a change in ownership of the shares of petitioner's corporate stock." Citing various statutory provisions, Phillips asserted four claims: (1) Mazda's disapproval of the transfer was given more than 60 days after receipt of the information, and therefore the transfer must be deemed approved as a matter of law; (2) consent to the transfer was unreasonably withheld because of the delay in notifying the parties of the need for additional information; (3) consent to the transfer was unreasonably withheld because it was based on a plan to terminate the franchise if its present principal sought to transfer his interest and cease to be the active dealer; and (4) Mazda's refusal to consent to the transfer was unreasonable under all of the circumstances.

In its prayer for relief, Phillips asked the Board to hold a hearing to adjudicate matters involving the unlawful activities of respondent, and to determine that (a) the sale "ha[d] been deemed approved by Mazda by operation of law and that Mazda's refusal to recognize said automatic approval violates ... section 11713.3"; (b) Mazda's refusal to consent to the transfer "[was] unreasonable as a matter of law due to Mazda's delay and thus violates ... section 11713.3"; (c) Mazda's refusal to consent also "[was] unreasonable as a matter of law because it constitutes implementation" of an illegal plan to phase out the dealership if transferred "and thus violate[d] ... sections 11713.2 and 11713.3"; and (d) Mazda's refusal further "[was] unreasonable under all the facts and circumstances, and thus violate[d] ... section 11713.3."

The petition also sought attorney fees and costs.

Mazda filed a motion with the Board to strike the petition on the grounds that attorney fees and costs can be awarded only by a court. (See § 11726 [court may award damages, attorney fees, and injunctive relief].) Mazda also contended the Board should exercise its discretion not to hear the petition, arguing that the superior court had jurisdiction to determine Phillips's claims and was a better forum for this dispute. In a supplemental brief, Mazda contended the Board did not have jurisdiction under section 3050, subdivision (c) to resolve disputes between licensees, and cited this court's decision in *Hardin Oldsmobile v. New Motor Vehicle Bd.* (1997) 52 Cal.App.4th 585 [60 Cal.Rptr.2d 583] (*Hardin*).

Phillips amended its petition to eliminate its request for attorney fees and costs. In opposition to the motion to strike, Phillips contended, in part, that the Board and the courts have concurrent jurisdiction over the type of claims asserted in the petition, and therefore the Board was an appropriate forum.

The administrative law judge denied the motion to strike. The judge held, among other things, that *"Hardin* does not limit the Board's authority to hear Petitioner's claims with allegations based on ... sections 11713.2 and 11713.3. Petitioner's claims are precisely the types of claims which this Board has particular knowledge and expertise to hear."

Mazda filed a petition for writ of mandate and prohibition in superior court, seeking to compel the Board to set aside its order denying the motion to strike and to grant the motion. After a hearing, the court, relying on *Hardin,* determined that "[t]here is no statutory authority permitting the Board to exercise jurisdiction over the matter at issue here: a petition filed by a dealer against a manufacturer/distributor asking the Board to rule that the latter improperly refused its consent to a transfer of ownership." The court granted the petition, issuing a writ of mandate ordering the Board to dismiss the petition and writ of prohibition requiring the Board to decline jurisdiction to hear and to decide the claims raised in the petition.

The Board and Phillips appeal from the ensuing judgment.

## DISCUSSION

The trial court's decision to grant Phillips's petition turned on its conclusion that there was no statutory basis for the Board's jurisdiction over a transfer dispute between a distributor and dealer. ■ We review de novo a decision based on the interpretation of the scope of a statute. (*Burden v. Snowden* (1992) 2 Cal.4th 556, 562 [7 Cal.Rptr.2d 531, 828 P.2d 672]; *Beverly v. Anderson* (1999) 76 Cal.App.4th 480, 483–484 [90 Cal.Rptr.2d 545].)

The Board, Phillips, and amicus curiae California Motor Car Dealers Association contend that section 3050, subdivision (c) confers jurisdiction on the Board to consider Phillips's claims, which assert violations of sections 11713.2 and 11713.3 that arise from a dispute between Mazda, a distributor, and Phillips, a dealer, over Mazda's refusal to consent to the transfer of a dealership. We disagree.

■ In determining legislative intent and a statute's purposes, we look first to the statutory language, giving significance to every word and phrase. (*DuBois v. Workers' Comp. Appeals Bd.* (1993) 5 Cal.4th 382, 387–388 [20 Cal.Rptr.2d 523, 853 P.2d 978].) When the language is clear, we look no further and enforce the statute according to its terms. (*Ibid.*)

Various provisions of section 3050 lead us to conclude that not every dealer-distributor dispute is within the province of the Board.

Section 3050, subdivision (a), which defines the Board's rulemaking authority, indicates that the Board does not have unlimited jurisdiction, by providing that the Board shall "[a]dopt rules and regulations ... *governing those matters that are specifically committed to its jurisdiction.*" (Italics added; see *Miller v. Superior Court* (1996) 50 Cal.App.4th 1665, 1675 [58 Cal.Rptr.2d 584].) As we reaffirmed in *Hardin*, " '[t]he Board is a quasi-judicial administrative agency of limited jurisdiction. [Citation.] It does not have plenary authority to resolve any and all disputes which may arise between a franchisor and a franchisee.' " (*Hardin, supra,* 52 Cal.App.4th at pp. 590–591; *Ri-Joyce, Inc. v. New Motor Vehicle Bd.* (1992) 2 Cal.App.4th. 445, 455 [3 Cal.Rptr.2d 546].) ▪ The Board's jurisdiction to preside over claims is limited by its statutory authorization. (*Hardin, supra,* 52 Cal.App.4th at pp. 597–598; *BMW of North America, Inc. v. New Motor Vehicle Bd.* (1984) 162 Cal.App.3d 980, 994 [209 Cal.Rptr. 50].) Where the Board's activities exceed its authorization, the Board violates the judicial powers clause of the California Constitution (Cal. Const., art. VI, § 1). (*Hardin, supra,* 52 Cal.App.4th at p. 598.)

In arguing that the Board has jurisdiction over this dispute, the Board and Phillips point to the broad introductory language of section 3050, subdivision (c), which provides that the Board shall "[c]onsider *any* matter concerning the activities or practices of *any* person applying for or holding a license as a new motor vehicle dealer, ... [or] distributor ... submitted by *any* person." (Italics added.)

However, in *Hardin*, we determined that this language does not define the Board's jurisdictional scope. We concluded instead that the Board's jurisdiction was limited and that the subsequent subparagraphs of section 3050, subdivision (c), which set forth the scope of the Board's authority, best indicated the limited jurisdiction conferred by section 3050, subdivision (c). "Broadly defined, the phrase '[c]onsider any matter concerning the activities or practices of any person applying for or holding a license as a new motor vehicle ... manufacturer [or distributor] submitted by any person' (Veh. Code, § 3050, subd. (c)), would include consideration of criminal actions and labor disputes. No one, including, most importantly, the Legislature that wrote it, would argue those matters fall under the jurisdiction of the Board; hence, the meaning of the phrase is limited. The best indication of the scope of the limitation is found in the remainder of the subdivision in which the Board is given authority to investigate the activities, resolve any honest differences of opinion or viewpoint with members of the public, and order the Department of Motor Vehicles to exercise its licensing authority over a malefactor." (*Hardin, supra,* 52 Cal.App.4th at p. 590.)

As we noted in *Hardin*, the authority described in section 3050, subdivision (c) was granted when the Board was formed in 1967. (*Hardin, supra,* 52

Cal.App.4th at p. 590.) The Board's function was regulation and discipline of licensees in the manner of other occupational licensing boards. (See *University Ford Chrysler-Plymouth, Inc. v. New Motor Vehicle Bd.* (1986) 179 Cal.App.3d 796, 800 [224 Cal.Rptr. 908] (*University Ford*); *American Motors Sales Corp. v. New Motor Vehicle Bd.* (1977) 69 Cal.App.3d 983, 986 [138 Cal.Rptr. 594].) The Board was intended as an industry response to problems with the practices of its members (*Toyota of Visalia, Inc. v. Department of Motor Vehicles* (1984) 155 Cal.App.3d 315, 322–323 [202 Cal.Rptr. 190] disapproved on another ground in *Kazensky v. City of Merced* (1998) 65 Cal.App.4th 44, 53–54, fn. 3 [76 Cal.Rptr.2d 356]), and its authority under section 3050, subdivision (c) therefore focused on investigation and discipline of licensees and dispute resolution with members of the public, not adjudication of disputes between licensees.

Comprehensive amendments to the Vehicle Code gave the Board the power to adjudicate certain dealer-distributor disputes. Specifically, in 1973, the Legislature "empowered the Board to resolve disputes involving '(1) whether there is "good cause" to terminate or to refuse to continue a franchise [citation]; (2) whether there is "good cause" not to establish or relocate a motor vehicle dealership in a "relevant market area" [citation]; (3) delivery and preparation obligations [citation]; and (4) warranty reimbursement [citation].' [Citation.] Thus, the Board no longer only sat in 'judgment upon new car dealers in such matters as eligibility and qualifications for a license, regulation of practices, discipline for rule violations, and the like. [The additional statutes gave the Board] the added power to intrude upon the contractual rights and obligations of dealers and their product suppliers, entities whose respective economic interests are in no way identical or coextensive, frequently not even harmonious." (*Tovas v. American Honda Motor Co.* (1997) 57 Cal.App.4th 506, 512–513 [67 Cal.Rptr.2d 145].)

To accomplish these goals, the legislation added subdivision (d) to section 3050, which gave the Board the power to hear and decide these specific dealer protests. (Stats. 1973, ch. 996, § 14, subd. (d), p. 1967.) Sections 11713.2 and 11713.3, specifying unlawful acts by manufacturers and distributors, became part of the code in the same legislation. (Stats. 1973, §§ 29–30, pp. 1976–1977 [these sections were enacted as §§ 11713.1 and 11713.2, respectively].)

As we pointed out in *Hardin*, these amendments highlight the limited jurisdiction of the Board under its original enabling legislation. "If the Board already had plenary authority in all matters pursuant to the enabling legislation in 1967, including the authority to consider any matter and resolve disputes between franchisors and franchisees, it would not have been necessary for the Legislature to give the Board jurisdiction, in 1973, over franchise disputes." (*Hardin, supra,* 52 Cal.App.4th at p. 590.)

In addition to the types of franchisor-franchisee disputes that may come before the Board under section 3050, subdivision (d), other types of disputes between franchisors and franchisees may fall within the jurisdiction of the Board under section 3050, subdivision (c). For example, a violation of section 11713.2 or 11713.3 may be grounds for discipline, e.g., suspension or revocation of a license. This power is alluded to in the introductory language of section 3050, subdivision (c), which states that the Board may consider matters concerning the activities or practices of licensees "pursuant to Chapter 4 (commencing with Section 11700) of Division 5 submitted by any person." Subdivision (c)(3) of the statute directly authorizes such action by providing that the Board may order DMV to take disciplinary action against "the license of any new motor vehicle dealer, manufacturer, manufacturer branch, distributor, distributor branch, or representative as that license is required under Chapter 4 (commencing with Section 11700) of Division 5." (See also § 11705, subd. (a)(10) [violations of sections 11713.2 and 11713.3 may be grounds for discipline].)

The recusal provision of section 3050, subdivision (c) recognizes that the Board may in addition consider some dealer-distributor disputes. The subdivision prohibits dealer members on the Board from participating in "any matter considered by the board pursuant to this subdivision that involves a dispute between a franchisee and franchisor." If the Board cannot consider a matter involving a dispute between a franchisee and a franchisor under section 3050, subdivision (c), the recusal provision is meaningless. ■ We reject interpretations that render particular terms of a statute mere surplusage or devoid of meaning. (*City of San Jose v. Superior Court* (1993) 5 Cal.4th 47, 55 [19 Cal.Rptr.2d 73, 850 P.2d 621].)

However, the statutory authorization in section 3050, subdivision (c) does not extend to *all* disputes between dealers and manufacturers. As we determined in *Hardin,* the scope of the Board's jurisdiction over such disputes is limited by the regulatory and disciplinary actions it may take, described in the numbered subparagraphs of section 3050, subdivision (c). *(Hardin, supra,* 57 Cal.App.4th at p. 590.) It is conceivable that a dispute between a franchisee and franchisor over transfer of a dealership could give rise to a petition that asserts violations of sections 11713.2 and 11713.3 and calls for an investigation or disciplinary action of the distributor pursuant to section 3050, subdivisions (c)(1) and (3). Such a petition would be within the Board's section 3050, subdivision (c) jurisdiction, as outlined in *Hardin.*

But that is not the posture of the case before us. Phillips did not request that the Board order DMV to investigate the matter or direct DMV to discipline Mazda by suspending or revoking its license. Instead, it sought an adjudication that the franchise was deemed approved and that Mazda's refusal

to recognize or consent to the transfer violated sections 11713.2 and 11713.3. Phillips, in essence, petitioned the Board to effectuate the transfer by ordering it approved and finding Mazda's failure to consent to it unlawful. The relief Phillips requested had everything to do with vindicating Phillips and accomplishing the sale of the dealership but nothing to do with licensee discipline. The petition therefore was not within the grant of authority to the Board under section 3050, subdivision (c).

The only subsection of section 3050 that gives the Board the authority to adjudicate disputes is subdivision (c)(2), which allows the Board to "[u]ndertake to mediate, arbitrate, or otherwise resolve any honest difference of opinion or viewpoint existing between any member of the public and any new motor vehicle dealer, manufacturer, manufacturer branch, distributor branch, or representative." Citing *Ray Fladeboe Lincoln-Mercury, Inc. v. New Motor Vehicle Bd.* (1992) 10 Cal.App.4th 51 [12 Cal.Rptr.2d 598] (*Ray Fladeboe*), Phillips argues that it is a "member of the public" and therefore this provision is applicable to its dispute with Mazda.

In *Ray Fladeboe*, the court accepted a similar contention without any analysis of the statutory language. (*Ray Fladeboe, supra,* 10 Cal.App.4th at pp. 54–56.) However, we rejected this interpretation in *Hardin,* stating that "[T]he legal authorization to resolve 'any honest difference of opinion or viewpoint' relates to differences of opinion or viewpoint the licensee has with a 'member of the public.' [Citation.] Again, this circumscribing language reveals a legislative intent to limit the ambit of honest differences of opinion or viewpoint over which the Board may preside. When referring to licensees, section 3050 specifically so states and exhaustively lists those licensees ('applicant for, or holder of, a license as a new motor vehicle dealer, manufacturer, manufacturer branch, distributor, distributor branch, or representative'). The legislative authorization in section 3050 to resolve differences of viewpoint, however, does not say it extends to traditional litigation between licensees; it limits the authorization to differences of opinion or viewpoint between a licensee and a member of the public." (*Hardin, supra,* 52 Cal.App.4th at p. 591.)

The Board and amicus curiae attempt to avoid a head-on collision with *Hardin.* They suggest that because the alleged violations of sections 11713.2 and 11713.3 could lead the Board to order the DMV to conduct an investigation or take disciplinary action pursuant to section 3050, subdivisions (c)(1) and (3), the Board had jurisdiction to consider the petition and determine whether to take these courses of action. In other words, regardless of whether the petition requested the Board to do something other than take disciplinary action, the Board has jurisdiction to consider the petition and take such action.

We cannot agree. As we have explained, the essence of the petition was an effort to effectuate transfer of the dealership by Board adjudication. Beyond the fact that Phillips alleged violations of sections 11713.2 and 11713.3, the petition had nothing to do with investigation or discipline of licensees. Under *Hardin*, the Board's jurisdiction under section 3050, subdivision (c) is not determined solely by whether or not the petitioner has asserted violations of statutes referenced in the subdivision but also depends on the nature of the petition, that is, whether it seeks adjudication or discipline. Here, Phillips understandably had no interest in the suspension or revocation of its supplier's license, and did not seek that relief.

Contrary to the Board's suggestion, the relief requested was not the result of "inartful pleading." In conformance with regulations promulgated by the Board, the petition requested in clear terms that the Board resolve a dispute pursuant to section 3050, subdivision (c)(2). California Code of Regulations, title 13, section 554, provides that "[a]ny person, including a board member, concerned with activities or practices" of any licensee "may file a written petition with the board requesting that the board consider such matter and take action thereon." The petition is required to recite, among other things, "[i]f the petitioner desires that the board mediate, arbitrate or resolve a difference between the petitioner and respondent ... [and to] describe the relief or disposition of the matter which petitioner would consider acceptable." (Cal. Code Regs., tit. 13, § 555, subd. (d).)

Phillips's petition made such a recitation. It named Mazda as respondent and alleged that "[c]ertain controversies and differences of opinion have arisen between petitioner and respondent, primarily relating to a change in ownership of the shares of petitioner's corporate stock." Phillips requested the Board to "adjudicate" the matter, that is, resolve the difference between Phillips and Mazda, and award the relief Phillips considered acceptable, a determination that the transfer was automatically approved and Mazda's failure to recognize or consent to the transfer was unlawful.

Nothing in the petition indicated that Phillips sought disciplinary action against Mazda. Instead, by its own terms, the petition invoked only the jurisdiction afforded the Board to resolve differences under section 3050, subdivision (c)(2). But, as we have explained, that section does not extend the Board's jurisdiction to disputes involving a dealer and distributor. The statute authorizes the Board to resolve only disputes that involve members of the public.

Phillips petitioned the Board to consider a dealer-distributor dispute that was not within its jurisdiction. The trial court therefore properly issued a writ ordering the Board to dismiss the petition and to decline to entertain the claims raised in it.

In light of our disposition of this case, we need not reach Mazda's contention that section 11726 mandates that the claims raised in Phillips's petition be directed exclusively to the superior court. Additionally, we deny Mazda's request for judicial notice of a ruling by the Board in another matter. (Evid. Code, § 459.)

## DISPOSITION

The judgment is affirmed. Mazda shall recover its costs on appeal.

Blease, Acting P. J., and Raye, J., concurred.